254 So.2d 607

**ST. JOHN THE BAPTIST PARISH
SCHOOL BOARD**

v.

**MARBURY–PATTILLO CONSTRUCTION
COMPANY, Inc. and South Louisi-
ana Port Commission.**

No. 50969.

Nov. 8, 1971.

Rehearing Denied Dec. 13, 1971.

Kizer, Cangelosi, Sanford & Mosely, Chapman L. Sanford, Baton Rouge, for plaintiff-appellant-applicant.

Don Almerico, Norco, John L. Peytavin, New Orleans, for defendant-appellee-respondent.

DIXON, Justice.

Plaintiff school board sued the defendants—a contractor and owner—to collect unpaid sales and use taxes. In the trial court there was judgment dismissing the demands against the owner (South Louisiana Port Commission) and casting the contractor (Marbury-Pattillo Construction Company, Inc.) for $12,338.00 for delinquent taxes, $786.00 as interest and $1,312.00 as attorney's fees. The Court of Appeal amended and affirmed 239 So.2d 387.

The narrow issues before us, on the writ of review granted plaintiff, are: was the Court of Appeal required to accept the taxing authority's estimate of taxes due, or was it authorized to substitute its own estimate; could the Court of Appeal waive the tax penalty; was the construction project owner ultimately liable for use taxes?

The school board of St. John the Baptist Parish enacted a sales and use tax ordinance, the validity of which is not at issue. The South Louisiana Port Commission contracted with Marbury-Pattillo Construction Company, Inc., an out-of-state contractor, to erect a "terminal grain elevator, dock structure and related facilities" for an original contract price of $8,656,000. At a time near the completion of the contract, the school board commenced this litigation to collect sales and use taxes from the contractor and the owner. The school board employed summary procedure in its rule for taxes, pursuant to R.S. 33:2841, 47:1574 and 13:5031, et seq.

The first issue before us arises from the fact that the school board, purporting to act under the provisions of R.S. 47:307(A) and section 9.04 of the taxing ordinance, *estimated* the tax due. This was done by taking 60% of the contract price (as it was known at the time). The contract price obviously contained a sum which was allocable to labor costs. There is no disagreement among the parties concerning this allocation. The 1% tax on 60% of the contract price amounted to $51,996.00. Since large construction equipment had been brought in for use in the execution of the contract, the collector estimated its value at $500,000, on which the tax was $5,000.00.

The collector presumed that the heavy equipment was brought in during the first month the tax was owed. As for the balance of the taxes due, the collector assumed that they would have fallen due in equal monthly amounts over the two year term of the contract. The collector then gave credit for each tax payment received in the month received. He then computed a 5% "negligence penalty" and a "statutory late penalty" on each monthly balance. The total tax and penalty claimed was $54,179.-

64, plus additional interest and attorney's fees.

The trial court held that, in addition to excluding 40% of the contract price for labor, an additional 20% of the contract price should have been excluded from taxation for "insurance, bonds, taxes, fees, replacement costs, freight, temporary roads, traveling expense, living expense, engineering costs, utilities, small tools, interest, contingencies and profit." The trial court further found "no justification" for the taxation of $500,000 for equipment use.

The Court of Appeal agreed with the trial court and found that the failure of the board to allow a deduction for profit and overhead from the contract price was arbitrary and unreasonable. The Court of Appeal further found "no justification to allow the addition of $500,000 to the contract price for equipment on the site at the beginning of the job." The Court of Appeal refused to award penalties because there was "evidence of good faith and a substantial effort" of the contractor to perform its obligations.

There are two reasons why the estimate of taxes due by the school board must be accepted. First, the sales and use tax is based on the gross price of the "tangible personal property" involved. Secondly, the defenses of the taxpayer were waived, under the provisions of the statute, by its failure to raise them within the time allowed by law.

The ordinance imposing the tax, in section 2.01, imposed "a tax upon the sale at retail, the use, the lease or rental, the consumption and the storage for use or consumption of tangible personal property * * * as follows:

"(1.) At the rate of one per cent (1%) of the cost price of each item or article of tangible personal property when sold at retail in this Parish; the tax to be computed on gross sales for the purpose of remitting the amount of tax due the School Board, and to include each and every retail sale.

"(2.) At the rate of one per cent (1%) of the cost price of each item or article of tangible personal property when the same is not sold, but is used, consumed, distributed or stored for use or consumption in this Parish; provided, there shall be no duplication of the tax.

"(3.) At the rate of one per cent (1%) of the gross proceeds derived from the lease or rental of tangible personal property, as defined herein, where the lease or rental of such property is an established business, or part of an established business or the same is incidental or germane to the said business.

"(4.) At the rate of one per cent (1%) of the monthly lease or rental price paid

by lessee or rentee, or contracted or agreed to be paid by lessee or rentee to the owner of the tangible personal property."

Section 1.03 of the ordinance defines "cost price" as "the actual cost of the articles of tangible personal property without any deductions therefrom an account of the cost of materials used, labor or service cost, transportation charges or any other expenses whatsoever."

■ Consequently, an examination of the taxing ordinance will not support the construction of the Court of Appeal and the district court that profit and overhead must be deducted from the contract price before the imposition of the tax. The ordinance levies the tax on the "cost price." The tax is levied on items sold at retail (a term broadly defined in the ordinance) as well as on articles used or stored or rented.

■ There is no need to "estimate" profit; such information is immaterial. Sales tax is imposed, not on profitable sales, but on all sales. The sales tax ordinance before us makes no provision for deducting any amount for overhead before applying the 1% tax rate to the cost price of the article. Nor is it relevant that a portion of the job was performed by subcontractors under contract with the general contractor. The detailed provisions of the taxing ordinance contain adequate protection against dual taxation, and as such, place on the general contractor a heavy burden in the reporting and the remission of the tax to the taxing authority.

■ The contractor ascribes two reasons to support the trial court and Court of Appeal in their excluding $500,000 for equipment and supplies brought into this State for this construction job: (1) the property "was part of bona fide interstate commerce; (2) the property never came to rest in this State and has never become a part of the mass of property of this State."

These contentions are not supported by the record. Machinery was brought in from outside the State of Louisiana and was used in the construction of the elevator and port facilities over a two year period. We find no serious attack on the *amount* estimated to be the value of the equipment brought in.

The Court of Appeal examined one of the principal issues presented by the school board: was the trial court justified in considering defenses not timely filed by the contractor? The holding of the Court of Appeal was that the contractor had failed to comply with the requirements of the statutes, and had not timely filed the pleadings in which its defenses were made; the Court of Appeal then proceeded to examine the method used by the school board to estimate the taxes due.

To determine whether the contractor's defenses were timely filed, it is necessary to examine the chronology of the litigation.

The school board filed its rule to collect the taxes on April 30, 1969. The rule was returnable May 8, 1969. On that day there was an ex parte order signed consolidating the rule for taxes with an injunction suit which had been previously filed. The plaintiff's objections based on R.S. 47:1574(2) [1] and C.C.P. art. 1605 [2] were preserved. The contractor filed exceptions on May 13, 1969. Its answer was not filed until June 16, 1969. Plaintiff filed a motion to strike the exceptions for the reason that they were filed too late.

The only pleadings filed by defendant on May 8, 1969, the return day of the rule, were a motion to consolidate and a motion for continuance. The motion to consolidate involved an injunction suit connected with this tax matter, the record in which is not before us. The motion for continuance alleged only that defendant's lawyer, a legislator, would be "on official business with the Wildlife and Fisheries Committee," of which he was a member, on May 8.

█ The statute is clear. Its validity is not under attack. No actual prejudice in the application of the statute is claimed. Its provisions are strict, but the language and intent are clear. The Court of Appeal was correct. Under R.S. 47:1574(2) all defenses must be filed prior to the time fixed for hearing, and those not so filed are not to be considered by the court.

The record, however, discloses no defense that should have availed the contractor concerning the taxation of $500,000 for equipment and supplies brought from out-of-state for use in constructing this elevator and port facility. There is no evidence in the

1. "In addition to any other procedure provided in this Subtitle or elsewhere in the laws of this state; and for the purpose of facilitating and expediting the determination and trial of all claims for taxes, penalties, interest, attorney fees, or other costs and charges arising under this Subtitle, there is hereby provided a summary proceeding for the hearing and determination of all claims by or on behalf of the state, or by or on behalf of the collector, for taxes, excises, and licenses and for the penalties, interest, attorney fees, costs or other charges due thereon, by preference in all courts, all as follows:

    *    *    *    *    *

"(2) All defenses, whether by exception or to the merits, made or intended to be made to any such claim, must be presented at one time and filed in the court of original jurisdiction prior to the time fixed for the hearing, and no court shall consider any defense unless so presented and filed. This provision shall be construed to deny to any court the right to extend the time for pleading defenses; and no continuance shall be granted by any court to any defendant except for legal grounds set forth in the Louisiana Code of Practice."

2. "Every contested motion for a continuance shall be tried summarily and contradictorily with the opposite party."

record to contradict the valuation estimated by the school board. The imposition of the tax under the ordinance involved is not only upon the sale, but upon the use, the lease or rental, and the storage for use within the parish. (Section 2.01 of the taxing ordinance). Neither the district court nor the Court of Appeal pointed out reasons for the exclusion of this equipment from the tax. Before us, the contractor has demonstrated no reason for the exclusion of this equipment from the provisions of the taxing ordinance.

■ Section 9.01 creates a presumption, broadly stated, that all movables located in the parish and held by a "dealer" are subject to the tax.[3] The burden in this case was clearly upon the contractor to show that any movables in its possession are not subject to the tax. The contractor has not met the burden.

The second issue raised by the school board concerned the failure of the district court and the Court of Appeal to impose penalties provided within the taxing ordinance. The district court found that, although there was doubt that the contractor "at all times acted in good faith," the contractor did comply with the taxing ordinance after the "initial misunderstanding" with the school board. The Court of Appeal agreed.

■ Good faith and substantial effort to comply were matters of defense that, like other defenses, were not timely raised by the contractor, and should not have been considered in connection with the award of penalties. The taxing ordinance leaves no discretion for the application of penalties. If the tax due is not paid by the 20th of the following month, interest and penalties are due.[4]

3. "For the purpose of the enforcement of this ordinance, and the collection of the tax levied hereunder, it is presumed that all tangible personal property, subject to the provisions of this ordinance, imported into this Parish or held in this Parish by any dealer is to be sold at retail, used or consumed, or stored for use or consumption in this Parish, or leased or rented within this Parish, and is subject to the tax herein levied; provided, that such presumption shall be prima facie only, and subject to proof furnished to the Treasurer."

4. "If the amount of tax due by the dealer is not paid on or before the twentieth (20th) day of the month next following month for which the tax is due, there

shall be collected, with said tax, interest upon said unpaid amount, at the rate of six per cent (6%) per annum, or fractional part thereof, to be computed from the first day of the month next following the month for which the tax is due until it is paid; and in addition to the interest that may be so due there shall also be collected a penalty equivalent to five per cent (5%) for each thirty (30) days, or fraction thereof of delinquency, not to exceed twenty-five per cent (25%) in aggregate, of the tax due, when such tax is not paid within thirty (30) days of the date the tax first becomes due and payable, and in the event of suit, attorney's fees at the rate of ten per cent (10%) of the aggregate of tax, interest and penalty."

■ The final specification of error complained that the owner, South Louisiana Port Commission, was not held to be ultimately liable for sales and use taxes incurred by the contractor. The question is largely academic because the port commission has not made the final payment to the contractor, pending the settlement of disputed issues. Further, the port commission's contract requires the contractor to pay all taxes. Nevertheless, the matter has been placed at issue. We agree with the conclusion of the Court of Appeal that the port commission is not liable for the tax, but for different reasons.

The taxing ordinance defines "tangible personal property" as:

"Section 1.20. 'Tangible Personal Property' shall mean and include personal property which may be seen, weighed, measured, felt or touches, or is in any other manner perceptible to the senses. The term 'tangible personal property' shall not include stocks, bonds, notes, or other obligations or securities."

The definition of "tangible personal property" in the ordinance corresponds with the definition of corporeal movables in the Civil Code. C.C. arts. 460, 473, 475. The port commission's contract was not for the purchase of movables, but for the construction of immovables. C.C. arts. 464, 467, 468. No provisions of the ordinance taxing

the owner of land who contracts for the erection of structures thereon have been brought to our attention, and we have been able to discover none. Considering the ordinance as a whole, it is apparent that it was contemplated that the sales tax apply only to movables, not immovables.

In the computation of the estimated tax due from the contractor, the school board allowed a $17,996.51 credit for tax paid. This schedule was filed with the petition in April of 1969. When the case was tried in June, the school board's witness testified that there were additional credits due the contractor for taxes paid, and that if he had prepared the computations for tax due on the day he testified, he would have credited the contractor with a total of $29,874.98. For the reasons testified to by the school board's witness, his schedule should have shown $11,878.47 in addition to the credits shown on the schedule.

For these reasons, the judgment of the Court of Appeal is affirmed in part and amended in part. There is now judgment in favor of the plaintiff, St. John the Baptist Parish School Board, and against the defendant, Marbury-Pattillo Construction Company, Inc., in the full sum of $54,-179.64 plus additional interest at the rate of 6% from April 20, 1969 on $39,333.24 (the principal tax owed), plus legal interest on $14,846.30 (penalties and interest to

April 30, 1969) from date of judicial demand until paid, plus 10% of the aggregate of tax, interest and penalty as attorney's fees, and all costs, subject to a credit of $11,878.47; there is further judgment in favor of the defendant, South Louisiana Port Commission, rejecting plaintiff's demands.

BARHAM, J., concurs.