353 So.2d 314 (1977)
EXXON CORPORATION, Plaintiff-Appellee,
v.
Joseph N. TRAIGLE, Collector of Revenue for the State of Louisiana, Defendant-Appellant.
No. 11571.
Court of Appeal of Louisiana, First Circuit.
November 21, 1977.
Rehearing Denied December 28, 1977.
Writ Refused February 17, 1978.
*315 Roger M. Fritchie, Baton Rouge, of counsel for plaintiff-appellee Exxon Corp.
Edwin M. Callaway, William Steven Mannear, Baton Rouge, of counsel for defendant-appellant Joseph N. Traigle, Collector of Revenue for the State of Louisiana and Secretary of Revenue and Taxation for State of Louisiana.
Before LANDRY, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
This is a suit for a refund of state sales and services tax paid under protest by Exxon Corporation. The tax in question covers the period January 1, 1969 through December 31, 1971. During this period Exxon did not pay a services tax on the cost of repairs to numerous items of equipment and machinery located at Exxon's refinery, Baton Rouge, Louisiana. When field personnel of the Collector of Revenue discovered this fact they assessed Exxon for a tax deficiency. Exxon paid the alleged deficiency and is now suing for a refund.
Plaintiff Exxon filed a motion for summary judgment with an attached affidavit in the trial court. The motion was granted and the Collector of Revenue is appealing the judgment rendered in plaintiff's favor. The affiant who was the manager of the material's department at Exxon's refinery declared that the property to which the repairs in question were made was either part of Exxon's operating units, part of Exxon's mechanical equipment necessary to operate the complex, or stand-by and back-up property [1] held in storage and required to maintain the operating units and mechanical equipment in continuous operation. The Collector filed no countervailing affidavits or depositions. The trial court found on the basis of the affidavit that the property in question was immovable by destination. It also held that "tangible personal property" as used in the tax statute must be interpreted in light of Civil Code Property definitions since the tax statute nowhere defines "personal property." Since the property was found to be immovable the tax could not be applied to its repair. Summary judgment was therefore granted. We affirm.
Appellant first alleges that the use of summary judgment was improper because the affidavit of Exxon's materials department manager did not establish that no issue of material fact existed.
"When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him." C.C.P. Art. 967, para. 2.
Since the Collector filed no countervailing affidavits or depositions, our duty is simply *316 to determine if summary judgment was "appropriate." In arguing that there were issues of material fact extant despite the affidavit the Collector is apparently confusing questions of law with questions of fact. His view is apparently that under a correct interpretation of the law more facts would have been necessary to render judgment. He points to no facts necessary to render judgment on the view of the law taken by the trial judge. We will therefore first determine if the trial judge was correct in his interpretation of the law and his application to the undisputed facts. If his interpretation is correct his judgment is likewise correct. If we find that his view of the law is incorrect we must then apply the correct view to the facts and determine if they are still sufficient to sustain a judgment.
Sales of services are taxed by R.S. 47:302 C [2] and 321 C.[3] A list of those transactions constituting sales of services is given in R.S. 47:301(14). The type of transaction with which we are concerned is "the furnishing of repairs to tangible personal property, including by way of illustration and not of limitation, the repair and servicing of automobiles and other vehicles, electrical and mechanical appliances and equipment, watches, jewelry, refrigerators, radios, shoes, and office appliances and equipment." R.S. 47:301(14)(g). An attempt is made at defining "tangible personal property" in R.S. 47:301(16).[4] It succeeds only in defining "tangible" which is apparently synonymous with "corporeal." C.C. Art. 460. In any event there is no dispute that all the property in question is "tangible."
Our first question is what is meant by the phrase "tangible personal property." Exxon asserts that because this terminology is unknown to Louisiana civil law its meaning should be ascertained by reference to the analogous civilian concept of corporeal movable property. The Collector argues instead that this could not be the intention of the legislature since the legislature is aware of all prior laws. The different wording must mean that a different test is to be used in property classification under the two laws. The Collector does not refer us to any criteria for use in defining personal property if civilian property law is not used. Apparently we could either use authorities from common law states, which have a concept of personal property, or develop our own body of law based on the "usual signification" of the term personal property. C.C. Art. 14.
Our task of discovering the legislative intent of the meaning of the term is made more difficult by the lack of legislative history on Louisiana sales tax. The first sales tax was adopted as Act 75 of 1936. The terminology "tangible personal property" was used therein and has been consistently used in all later reenactments of the sales tax.
In its use of this common law term we do not believe the legislature intended to import the common law into Louisiana for the purpose of sales tax law or to require the court to develop a new body of property law for the purpose of the sales tax. We find it more likely that the legislature desired that this undefined term be defined in accordance with the general property law *317 of Louisiana. Other states use their general property law to explain their sales tax law. See Marsh v. Spradling, 537 S.W.2d 402 (Mo.1976). Therefore we find it only natural to assume that despite using common law terminology, the legislature intended that Louisiana property law be applied to give explanation to Louisiana tax law.
Although we have been unable to find any controlling cases directly holding that personal property as used in the sales tax law is the same as movable property as used in our property law, we are buttressed in our opinion by several authorities. In the definitions given in the ad valorem tax law personal property is treated as synonymous with movable property. R.S. 47:1702(3).[5] The correlation of the two terms was first introduced into these definitions by Act 170, § 91 of 1898. The use of the terms as synonyms is not uncommon in Louisiana even today.
The Louisiana Supreme Court has also equated tangible personal property as used in a parish taxing ordinance with corporeal movable property as used in the Civil Code. St. John the Baptist Parish School Board v. Marbury-Pattillo Construction Co., 259 La. 1133, 254 So.2d 607 (1971). The Third Circuit has held to like effect in American Sign and Indicator Corp. v. City of Lake Charles, 320 So.2d 234 (La.App. 3d Cir. 1975). The case there involved the state sales tax as well as school board and city taxes using the same language. The court there equated tangible personal property to corporeal movable property and held that "sales tax is not levied on the sale or use of immovable property."
Having determined that the trial judge was correct in holding tangible personal property to be a synonym of corporeal movable property, we must determine the classification of the property in question under the general property law. There are three types of property in questionoperating units, mechanical equipment necessary to operate the complex, and back-up equipment[6] held in storage. The Collector has conceded that if general property law is applied the operating units which are permanently attached to the ground or to buildings on the land are immovables. We therefore need only consider the equipment which is not attached permanently but is instead used to operate the refinery or is stored in the refinery[7] for future use there.
We believe that both of these types of property fit within the test of being for the "service and improvement [exploitation]" of an industrial establishment. C.C. Art. 468;[8]Straus v. City of New Orleans, 166 La. 1035, 118 So. 125 (1928). Equipment used to carry out manufacturing is certainly immovable. Rochereau v. Bobb, 27 La. Ann. 657 (1875); see also, Yiannopoulos, Civil Law of Property, § 52 (1966) and cases cited therein. We find no basis for distinguishing *318 property which is presently being operated at the refinery from that kept in storage[9] for future use. It is necessary to maintain back-up equipment[10] in this fashion in order to have continuous operation, according to the uncontroverted affidavit of Exxon's manager. The wording of Art. 468 is certainly broad enough to include such back-up[11] property. Absent a reason for not including such property, we find that it is immovable by destination.
The Collector argues that even if the property was immobilized it became de-immobilized when it was removed from service and sent for repair. This is incorrect. An occasional removal of a thing that has become immovable by destination does not affect its status. Lafleur v. Sylvester, 135 So.2d 91 (La.App. 3d Cir. 1961) (use of manure spreader off farm). Analogous application of Art. 476[12] of the Civil Code gives this same result. That article states that materials taken from a building which are to be repaired with the intention of replacing them do not lose their status as immovables. The same rule should apply to machinery which is immovable by destination.
We therefore find the trial judge was correct in his view of the law. Property law was correctly applied to find that Exxon's property was immovable.
For the reasons assigned, the judgment is affirmed, defendant to pay such costs as authorized by law.
AFFIRMED.
NOTES
[1] The stand-by and back-up property referred to in this opinion are parts of machinery that have been removed for repairs and after repairs are either reattached to the main unit or placed in storage for future use.
[2] "C. There is hereby levied a tax upon all sales of services, as herein defined, in this State, at the rate of two per centum (2%) of the amounts paid or charged for such services.

The tax levied in this Section shall be collected from the dealer, as defined herein, shall be paid at the time and in the manner hereinafter provided, and shall be, in addition to all other taxes, whether levied in the form of excise, license, or privilege taxes, and shall be in addition to taxes levied under the provisions of Chapter 3 of Subtitle II of this Title."
[3] "C. In addition to the tax levied on sales of services by R.S. 47:302 C and collected under the provisions of Chapter 2 of Title 47, there is hereby levied a tax upon all sales of services, as defined by said Chapter 2 of Title 47 in this state, at the rate of one percentum of the amounts paid or charged for such services."
[4] "(16) `Tangible personal property' means and includes personal property which may be seen, weighed, measured, felt or touched, or is in any other manner perceptible to the senses. The term `tangible personal property' shall not include stocks, bonds, notes, or other obligations or securities."
[5] "(3) `Personal property' or `movable property' means and includes all things other than real estate which have any pecuniary value, all moneys, credits, investments in bonds, stocks, franchises, shares in joint stock companies or otherwise, rights to cut and remove or use standing trees or timber from the land of another whether the time to do so be limited or not, all standing timber or trees owned by any person other than the owner of the land upon which it or they stand, all cases where the ownership of standing trees or timber, or the right to cut and use standing trees or timber is in any person other than the owner of the land upon which the trees or timber stand; the trees or timber or the right to cut and use the same as the case may be shall be assessed to the owner of such right of trees or timber for taxation in the parish where the trees or timber is situated."
[6] See Note 1, supra.
[7] Ibid.
[8] "Art. 468. Things which the owner of a tract of land has placed upon it for its service and improvement are immovable by destination.

Thus the following things are immovable by destination when they have been placed by the owner for the service and improvement of a tract of land, to wit:
* * * * * *
The utensils necessary for working cotton, and sawmills, taffia distilleries, sugar refineries and other manufactures."
* * * * * *
[9] See Note 1, supra.
[10] Ibid.
[11] Ibid.
[12] "Art. 476. Materials arising from the demolition of a building, those which are collected for the purpose of raising a new building, are movables, until they have been made use of in raising a new building.

But if the materials have been separated from the house or other edifice, only for the purpose of having it repaired or added to, and with the intention of replacing them, they preserve the nature of immovables, and are considered as such.