515 So.2d 625 (1987)
CAJUN CONTRACTORS, INC.
v.
STATE of Louisiana, DEPARTMENT OF REVENUE AND TAXATION.
No. CA 86 1051.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
*626 David R. Cassidy, Gordon A. Pugh, Baton Rouge, for plaintiff-appellee Cajun Contractors, Inc.
Robert F. Smith, Baton Rouge, for defendant-appellant Shirley McNamara, Secretary, Dept. of Revenue and Taxation, State of La.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
This is an appeal from a judgment in favor of the taxpayer on a protested assessment of sales/use taxes by the Louisiana Department of Revenue (hereinafter "Department").
The Department performed a field audit of the books and records of Cajun Contractors, Inc. (hereafter "Cajun"). The Department proposed an assessment in the amount of $114,551.09 for Louisiana general sales taxes and interest allegedly due the Department. Cajun paid the assessment under protest pursuant to La.R.S. 47:1576.

FACTS
Cajun entered into several contracts with the State to perform heavy construction. The Department's assessments are directed at contracts to construct a water treatment facility and increase the generating capacity at Louisiana Tech at Ruston.
Cajun was to provide the materials, labor and equipment necessary to fulfill the contract. The Department's assessment is only on the equipment that was transferred to the state in accordance with the contract, not on materials used in the construction. Lawn mowers, lab equipment, generators *627 and a portable generator are a few of the items assessed.
The trial court held the transfer to the state to be a sale of movable property. At the time of the sale, the state was exempt from the payment of sales taxes per La.R. S. 47:305.29. The trial court held that Cajun was not liable for the taxes in question.
Additionally, the three shareholders of Cajun established Cajun Equipment Company (CEC), a partnership for federal tax purposes. CEC's sole function was to acquire construction equipment and provide it to Cajun. The partnership was established in an attempt to allow the partners to make use of depreciation deductions and tax deductions that Cajun could not make use of as a corporation. The IRS refused to allow this and recognized Cajun and CEC as a single entity. The Department's assessment was based on the payments made from Cajun to CEC.
The trial judge found in favor of Cajun and awarded judgment in the amount paid under the protested assessment. The Department appeals the trial court's rulings as to both assessments.
The issues raised on appeal are whether provisions for the transfer of specified movable property and the title thereto, contained within a contract to build, constitutes a contract of sale, and whether the substance of the transaction between Cajun and CEC constitutes a taxable lease or rental under the provisions of La.R.S. 47:302.

CONTRACT TO BUILD
The general purpose and statutory scheme of the Louisiana sales/use tax, La.R.S. 47:301-318 is to impose the tax upon the ultimate purchaser or user of the particular product purchased or used. The tax is assessed on tangible personal property, which has been recognized as movable property in Louisiana. Traigle v. PPG Industries, 332 So.2d 777 (La.1976). If the contract is deemed a sale to the state no tax can be imposed because of the state's exemption from the payment of sales tax under La.R.S. 47:305.29. However, in performing a contract to construct an immovable, a contractor is the ultimate purchaser of materials incorporated into the immovable and can be taxed for state use. American Sign and Indicator Corp. v. City of Lake Charles, 320 So.2d 234 (La. App. 3 Cir.1975). Consequently, the validity of the Department's position depends on the classification of the contract.
The Department contends that American Sign controls in the present case. American Sign dealt with a contract for the construction of an immovable and did not have a transfer of movable property. Materials, not equipment, were involved and the materials had been incorporated into and lost their integrity as movable property.
The trial court in the present case found that the equipment in question had retained its integrity as movable property even though incorporated into the water treatment or electrical generating facility. Evidence was produced to show that the generators, pumps, compressors, etc., were designed and equipped to be removed as easily as possible without damage to themselves or the unit to which they had been incorporated. Transport hooks, eyelets and skids remained on the equipment after installation and all couplings were either threaded or snap-on. The equipment had a value after removal as used equipment or as salvage.
"Things permanently attached to a building or other construction, such as plumbing, heating, cooling, electrical or other installations, are its component parts. Things are considered permanently attached if they cannot be removed without substantial damage to themselves or to the immovable to which they are attached." La.C.C. art. 466. Comment (b) to Article 466 states in part: "In this revision, things that are not permanently attached to a building or other construction remain movables." The trial judge found that the equipment in question was not intended to be permanently attached nor was it so attached.
The state specified the equipment in question in its specifications for the construction *628 projects. The principal reasons for choosing this type of equipment, among others, are ease of removal for repair and the potential for updating the facility by bolting in a more powerful generator or pump. Bids were taken on the construction projects and Cajun was awarded the contracts. The Department contends that the equipment in question was supplied as part of a "lump sum contract to build" and should be regarded as materials of the contractor. Under this argument materials used in construction would not be distinguishable from equipment furnished under the contract. According to the Department's interpretation, the contract to build could have provisions for the transfer of an automobile or a bulldozer and yet be regarded as a contract to build.
The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent. La.C.C. art. 2439.
The state specified the movable property in question. After each piece of property was delivered to the job site, the state was to be billed for the cost of the equipment and to pay this amount to Cajun as partial performance in the building contract. Consent is expressed in the contract and in the actions of the parties. The contract provided for the transfer of title to this property to the state upon payment.
It is obvious that the state and Cajun entered into an agreement to build a water treatment facility and increase electrical generating capacity. It is also just as obvious that the state intended to have Cajun supply movable property to operate the facility and for title and ownership of this equipment to pass to the state. Although couched within the title of a contract to build, this evinces a sale of the equipment to the state. This interpretation is supported by the wording of La.R.S. 47:301(12) which states in part:
"`Sale' means any transfer of title or possession, or both, exchange, barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property, for a consideration..."

ASSESSMENT OF CAJUN'S AND CEC TRANSACTIONS
The second issue is the taxability of the transaction between Cajun and CEC, a partnership comprised of Cajun's three shareholders. CEC's sole purpose for existence was purchasing equipment for Cajun. For insurance, bonding and federal taxation purposes, they were treated as a single entity. CEC had no separate employees. All of CEC's clerical work was performed by Cajun's employees. The payments made by Cajun to CEC were for the exact amount due on the notes used to purchase the equipment. There was never a written lease between Cajun and CEC.
The Department cites Hilton Hotels Corp. v. Traigle, 360 So.2d 245 (La.App. 1 Cir.1978) as controlling authority. In Hilton, Hilton Hotels Inc. formed Hilton Equipment Company to purchase equipment for Hilton on an as needed basis. It was held that the transfer of funds from Hilton to HEC was a taxable transaction. Hilton is distinguishable from the present case in that HEC employed personnel separate from Hilton. It paid its employees directly from HEC funds. The fee HEC charged Hilton included a flat 10% markup and all transactions between Hilton and HEC were fully documented. None of these facts are present in the Cajun-CEC relationship.
The substance of an agreement is controlling for the determination of tax liability for sales/use or lease/rental purposes. McNamara v. Electrode Corporation, 418 So.2d 652 (La.App. 1st Cir.) writ denied, 420 So.2d 986 (La.1982). Substance over form was argued but refused in Hilton due to the presence of the facts that distinguish it from the present case.
The trial court held that the transaction between Cajun and CEC was not a taxable transaction for purposes of La.R.S. 47:301-318. The trial court based its decision on the substance of the transaction, not the form.
*629 The question of whether these facts show a taxable transaction under the La.R. S. 47:301-318 is a question of law. We find the ruling of the trial court to be legal. Accordingly we affirm the judgment of the trial court.
Costs of this appeal are assessed against the Louisiana Department of Revenue in the amount of $315.45.
AFFIRMED.