534 So.2d 454 (1988)
SALES TAX COLLECTOR, ST. CHARLES PARISH, Louisiana
v.
WESTSIDE SAND CO., INC.
No. 87-CA-845.
Court of Appeal of Louisiana, Fifth Circuit.
May 16, 1988.
On Rehearing November 16, 1988.
Writ Denied January 20, 1989.
Robert L. Hammonds, Baton Rouge, for plaintiff-appellant.
Gerald P. Webre, Metairie, for defendant-appellee.
Before BOWES, GRISBAUM and GOTHARD, JJ.
BOWES, Judge.
Appellant, Sales Tax Collector, St. Charles Parish (hereinafter Tax Collector), appeals the judgment of the trial court which held that sand pumped from the Mississippi River is not subject to the sales tax provisions of Louisiana and St. Charles Parish sales tax laws. We reverse.
No evidentiary hearing was held in the instant case, although the court was requested and urged by plaintiff to do so. Therefore, the facts that were made available to this court are minimal. As gleaned from the record, the Tax Collector determined that Westside Sand Company, Inc. (hereinafter Westside) was not paying sales tax for sand pumped from the river in St. Charles Parish, and sold at retail. Westside refused to permit any inspection of its books by the Tax Collector, based on the premise that the sand that was sold was not subject to the sales tax laws. Pursuant to this investigation, the Tax Collector filed a Petition for a Writ of Distraint and Order Reqiring [sic] Dealer to Permit Examination of Business Records. There seems to be a disagreement between the attorneys as to whether a valid written stipulation was entered into (we find none filed in the record), but a hearing was held at which the parties agreed that the primary issue would be the taxability of the sand and, on pp. 62 and 63, the parties entered into the following agreement:
MR. HAMMONDS:
Mr. Webre and I agree that Your Honor is going to need a brief on this question and that the primary issue will be the taxability of the sand. We'd like to avoid the necessity of coming back in the event you should hold it taxable and having to have an evidentiary hearing on the amount of the assessment, so what we have agreed to do is to stipulate that in the event that Your Honor should rule that the sand is taxable, that judgment could be rendered against the defendant in the amount prayed for in the rule, that being $534.17, plus interest at the rate of 12% from the date of the assessment, October 31, 1984, until the date that it's paid and that Westside Sand Company at that time will make available to the tax collector its sales tickets and invoices *455 showing the amounts of sand that it has sold in St. Charles Parish.
THE COURT:
Okay.
MR. WEBRE:
One more thing, Your Honor. That's paid under protest and we will appeal that, that amount. But in order to save him from coming from Baton Rouge to come back and argue it, we'll agree to have a judgment for that amount and appeal it and pay it under protest.
THE COURT:
Okay. So what we need is a brief saying whether or not the sales tax is due and owing and whether or not the sand is taxable and the type of sand that we have, the questions that we have.
The trial judge ordered that the matter be submitted on briefs by both parties. The trial judge rendered an opinion, of less than one page, prior to the rendition of a judgment, in which he adopted the brief submitted by the defendant, Westside, as his reasons for judgment, thus reasoning (apparently) that sand, even removed from its natural source, is not subject to the sales tax laws. Subsequently, the trial judge rendered judgment which ordered the Tax Collector's rule be dismissed.
On appeal, appellant, Tax Collector, presents three assignments of error:
(1) The trial court erred in its conclusion that the sale of sand could not, under any set of circumstances, be considered to be the sale of "tangible personal property" and be subject to a levy of sales tax.
(2) The trial court erred in dismissing the Petition for a Writ of Distraint filed by the Collector without conducting an evidentiary hearing, which would have given the Collector an opportunity to present evidence to the Court demonstrating that the river sand or pump sand in question was not an `integral part of the land' so as to become a component part of it. The trial court also erred in reaching factual conclusions in the absence of an evidentiary hearing, and, which were not supported by evidence or argument.
(3) The trial court erred in dismissing the Collector's request for an order requiring Westside to make its records available for inspection and audit.
ASSIGNMENT OF ERROR NO. 1
Appellant argues that sand removed from its natural source is a tangible personal property subject to the sales tax laws of Louisiana. Appellee takes the position that there are no laws or cases in Louisiana to authorize the charging of sales tax on such soil. Appellee buttresses his argument with pertinent sections of the Mineral CodeLSA R.S. 31:1 et seq. Specifically:
LSA R.S. 31:4
§ 4. Substances to which Code applicable
The provisions of this Code are applicable to all forms of minerals, including oil and gas. They are also applicable to rights to explore for or mine or remove from land the soil itself, gravel, shells, subterranean water, or other substances occurring naturally in or as a part of the soil or geological formations on or unlying the land.
LSA R.S. 31:18
§ 18. Nature of mineral rights
A mineral right is an incorporeal immovable. It is alienable and heritable. The situs of a mineral right is the parish or parishes in which the land burdened is located. All sales, contracts, and judgments affecting mineral rights are subject to the laws of registry.
By such arguments, the appellee is claiming an exemption to the sales tax laws of the state of Louisiana and the parish of St. Charles. However, the law is clear that exemptions from taxation are to be strictly construed and affirmatively established. Vulcan Foundry, Inc. v. McNamara, 414 So.2d 1193 (La.1981); McNamara v. George Engine Company, Inc., 519 So.2d 217 (La.App. 5 Cir.1988). Any plausible doubt as to the exemption is fatal. Cajun Elec. Power Co-op., Inc. v. McNamara, 452 So.2d 212 (La.App. 1 Cir. 1984) writ denied 458 So.2d 123 (La.1984); A & P *456 Boat Rentals, Inc. v. Cronvich, 361 So.2d 1260 (La.App. 1 Cir.1978) writ denied 363 So.2d 923 (La.1978).
Consequently, the appellee must show that sales tax cannot be charged on any soil once it is removed from its natural source. We find such is not the case. We reach this decision after extensive research which reveals that there are no cases specifically on point. Therefore, we are required to make our own determination by interpreting the applicable law.
LSA R.S. 47:301 et seq. is that portion of the statutes that regulate sales tax. LSA 47:301 (16) provides a very broad definition of tangible personal property that is subject to the sales tax laws:
(16) "Tangible personal property" means and includes personal property which may be seen, weighed, measured, felt or touched, or is in any other manner perceptible to the senses. The term "tangible personal property" shall not include stocks, bonds, notes, or other obligations or securities.
Although "tangible personal property" is generally thought of as a common law term, we are of the opinion that our legislature did not intend to import the common law into Louisiana, but rather they intended that this term should be defined in accordance with the general property law of Louisiana. See Exxon Corp. v. Traigle, 353 So.2d 314 (La.App. 1 Cir.1977), writ refused 354 So.2d 1385 (La.1978). Thus, "tangible personal property" is akin to the definition of corporeal movables in the Civil Code. LSA C.C. arts. 461 and 471 et seq. St. John the Baptist P.S.B. v. Marbury-Pattillo C. Co., 259 La. 1133, 254 So.2d 607 (1971); American Sign & Ind. Corp. v. City of Lake Charles, 320 So.2d 234 (La. App. 3 Cir.1975).
Having concluded that "tangible personal property" is analogous to corporeal movables, we must next determine if sand, once removed from its natural source, remains an immovable or becomes, from a legal point of view, a movable. Whether we utilize the Civil Code or the Mineral Code, we are left with no other conclusion but that, once removed from its natural source, sand becomes a corporeal movable.
LSA C.C. art. 468,[1] in pertinent part, states:
In the absence of rights of third persons, the owner may deimmobilize things by detachment or removal, [emphasis added]
Thus, according to the Civil Code, once the sand is removed from its natural source, it does, in fact, become deimmobilized.
We are further guided by the Mineral Code. LSA R.S. 31:5 states:
Ownership of land includes all minerals occurring naturally in a solid state. Solid minerals are insusceptible of ownership apart from the land until reduced to possession.
LSA R.S. 31:7 provides the definition for when minerals are reduced to possession:
Minerals are reduced to possession when they are under physical control that permits delivery to another.
The Comments immediately following LSA R.S. 31:7 state in pertinent part:
In the case of solid minerals, the landowner is regarded by Article 5 as the owner of such substances, but vesting of possession will still determine when minerals extracted become subject to the law of movables. As to others than the landowner, vesting of possession will have the dual effect of marking the vesting of title and mobilization, [emphasis added]
Consequently, in the instant case, although the right to mine for minerals is considered an immovable (LSA R.S. 31:18), once the sand is mined and the sand is in a *457 state which permits delivery to Westside, possession takes place, and the sand becomes a movable subject to the sales tax laws of this state and St. Charles Parish.
Further, in argument before the trial judge, defendant's counsel stated that severance taxes had been paid on all of the sand in question. The definition of severance was provided in Traigle v. Lafayette Airport Commission, 309 So.2d 904 (La. App. 3 Cir.1975), quoting from regulations entitled "Severance Tax Regulation of Timber, Pulpwood and Minerals Other Than Gas and Oil", wherein the court stated:
`Severance' means the separation of the natural resources from the soil or water, or its removal from its natural position. For example, the dredging of sand from a river, the cutting of timber, the mining or removal of a mineral from its natural location. Severance does not refer to the refinement of a natural resource after its removal. [Emphasis supplied]
Once the sand is severed from its natural position, it logically follows, and we hold, that it then becomes a corporeal movable or tangible personal property of the one who severs it. Westside cites Landry v. LeBlanc, 416 So.2d 247 (La.App. 3 Cir. 1982) for the proposition that an owner's topsoil did not become movable by its placement in trucks to be hauled away. That case is easily distinguishable from the instant case. Landry, supra, involved a verbal form lease of property where the lessee contracted to have the sand removed to improve drainage. The court held that, as the form of the property involved was part of an immovable, any transfer of ownership was required to be in writing. In other words, the lessee had no right to remove the topsoil without the express written permission of the owner.
We find that Westside did not meet the stringent burden of proof established in Vulcan Foundry, Inc. v. McNamara, supra, and we disagree with their argument that, under the Mineral Code, sand, even that which is removed from its natural source, remains an immovable. We find this view to be fallacious and illogical. Therefore, we are of the opinion that the trial judge committed manifest error in determining otherwise, and the above cited stipulation agreed upon by the parties at the hearing is now effective. Accordingly, Westside is ordered to pay the Tax Collector $534.17, plus interest at the rate of 12% from the date of assessment, October 31, 1984, until paid.
ASSIGNMENT OF ERROR NO. 2
In view of the agreement entered into the record by the attorneys (referred to above), and our findings and holding in this case, this assignment of error has become moot and need not be addressed.
ASSIGNMENT OF ERROR NO. 3
Since we find sand is subject to the tax laws of the state and parish, Westside is ordered to allow the plaintiff Tax Collector full and complete inspection of its records to the fullest extent provided by the law. See LSA R.S. 47:309; ST. CHARLES SALES AND USE TAX ORDINANCE adopted May 23, 1978, specifically Sections 7.01, 7.02, 7.03, 7.04, 7.08(3), 7.08(4) and 9.11, but including any other applicable laws. Additionally, we have already noted that, in the agreement referred to above, Westside agreed to make available its sales tickets and invoices if it was determined that the sand was taxable.
Accordingly, for the reasons stated, the judgment of the trial court is reversed and judgment is now rendered in favor of the plaintiff Tax Collector and against Westside for $534.17, plus interest thereon at the rate of 12% from October 31, 1984 until paid, and for all costs of all proceedings in the district court, as well as this court. Additionally, Westside shall allow inspection of its books and records pursuant to the applicable tax laws of the State of Louisiana and the Parish of St. Charles.
REVERSED AND RENDERED.

ON REHEARING
After consideration of the arguments presented on rehearing, we reaffirm our original opinion.
REVERSED AND RENDERED.
NOTES
[1] Art. 468. Deimmobilization

Component parts of an immovable so damaged or deteriorated that they can no longer serve the use of lands or buildings are deimmobilized.
The owner may deimmobilize the component parts of an immovable by an act translative of ownership and delivery to acquirers in good faith.
In the absence of rights of third persons, the owner may deimmobilize things by detachment or removal.