604 So.2d 593 (1992)
LOUISIANA PAVING CO., INC. and Gulf Coast Pre-Stress Co., Inc.
v.
ST. CHARLES PARISH PUBLIC SCHOOLS and E.H. Flynn.
No. 91-CA-829.
Court of Appeal of Louisiana, Fifth Circuit.
June 23, 1992.
Writ Denied October 29, 1992.
*594 Herman C. Hoffman, Jr., John F. Shreves, Simon, Peragine, Smith & Redfearn, New Orleans, David E. Walker, Michael T. Tusa, Jr., Metairie, for plaintiff-appellant.
Leon C. Vial, III, Julie M. Burke, Hahnville, for defendant-appellee.
Virginia L. LoCoco, LoCoco & LoCoco, Metairie, amicus curiae, briefed, for Associated Builders and Contractors.
W.P. Wray, Jr., Chris P. Pierce (Charles Wm. Roberts, of counsel), Wray & Kracht, Baton Rouge, amicus curiae, briefed, for Louisiana Associated Gen. Contractors, Inc.
Before KLIEBERT, GAUDIN and GRISBAUM, JJ.
GRISBAUM, Judge.
This appeal arises from the imposition of a Parish sales/use tax upon the plaintiffs. We set aside and annul.

ISSUE
The single issue presented is whether the trial court erred in interpreting the contract between Louisiana Paving Company, Inc. (Louisiana Paving) and Gulf Coast Pre-Stress, Company, Inc. (Gulf Coast) as a contract for the sale of tangible personal property instead of a subcontract for the construction of an immovable.

FACTS
Louisiana Paving was the general contractor on State Project No. 450-36-06, Federal Aid Project No. I-310-4(62)220, Luling Bridge (North Approach)La. 626 Highway, St. Charles Parish (hereinafter, the "I-310 Project"), pursuant to a Contract of Construction ... with the State of Louisiana (hereinafter the "General Contract"). The General Contract required Louisiana Paving to construct and turn over to the State a portion of the I-310 interstate highway system in St. Charles Parish. Involved in their portion of the I-310 Project was the construction of an elevated roadway supported by pilings. One of Louisiana Paving's *595 contractual responsibilities under the General Contract was the fabrication and installation of concrete girders to be used to span the pilings and support the concrete decking of the roadway. The General Contract provided that Louisiana Paving was to be paid for this work, both the fabrication and the installation of the concrete girders, on a "unit price" basis. That is, Louisiana Paving was to be paid a set unit price for each linear foot of each type of concrete girder fabricated and installed.
Louisiana Paving subcontracted the fabrication and installation of these concrete girders to Gulf Coast. Pursuant to paragraph 3 of the Subcontract ..., Gulf Coast was required to "provide, erect, align and bolt" the pre-stress concrete girders into the I-310 Project. Gulf Coast fabricated the pre-stress concrete girders at Pass Christian, Mississippi, where they were inspected and approved by officials from the Louisiana Department of Transportation and Development, Office of Highways. When Louisiana Paving would complete a certain number of concrete pilings, it would notify Gulf Coast that the I-[3]10 Project was ready to receive a specified number of girders. At that time, Gulf Coast would transport the designated number of pre-stress concrete girders that were approved by the Louisiana Department of Transportation and Development to the I-310 Project where they would be installed in accordance with the Subcontract.
In 1988, the Louisiana Department of Revenue and Taxation for the State of Louisiana audited Gulf Coast with respect to the Subcontract and assessed a state use tax of 4% only on the cost of materials that were used by the [sic] Gulf Coast in the manufacture of the pre-stress concrete girders. In other words, the State of Louisiana taxed the cost of the sand, cement, gravel and reinforcing steel that went into the construction of the girders but not the total cost of the girders as a finished product, which would have resulted in a use tax on not only the listed materials but also on the labor and profit portion of the Subcontract price. The total taxes paid to the State of Louisiana under its audit was $39,291.26, on a total material cost of $982,281.59. In making its determination to tax Gulf Coast only on the materials portion of the Subcontract, the State of Louisiana determined that the Subcontract was a true construction contract and not a sales contract for the sale of prefabricated concrete girders by Gulf Coast to Louisiana Paving.
In 1989, the St. Charles Parish Public Schools and Mr. E.H. Flynn (the "Parish") audited Louisiana Paving with respect to the Subcontract and assessed a parish use tax of 3% on the entire cost of the concrete girders (including materials costs, labor costs, transportation charges and profit, but not including installation costs). The total assessed parish use tax equaled approximately $77,999, plus penalties of $7,428.53, interest of $1,504.96, and an additional audit fee of $876.81. This use tax amount, plus interest and penalties, was paid under protest to the St. Charles Parish Public Schools in 1989....
Original brief by plaintiff-appellant, Louisiana Paving, at pp. 1-3 (emphasis supplied).

LAWTAX LIABILITY
Our jurisprudence provides us with the following guidelines:
The purpose of a sales/use tax scheme is to make all tangible personal property used or consumed within the state subject to a uniform tax burden irrespective of whether it is acquired in the state, making it subject to the sales tax, or acquired from without the state, making it subject to the use tax at the same rate. Chicago Bridge & Iron Co. v. Cocreham, 317 So.2d 605 (La.1975).
The substance of the contract is controlling for the determination of tax liability for sales/use tax purposes. Cajun Contractors, Inc. v. State of La., Dep't of Revenue and Taxation, 515 So.2d 625 (La. App. 1st Cir.1987). The sales/use tax is payable by the general contractor, who is held to be the ultimate purchaser or user of *596 building materials used in construction of an immovable. The building materials, equipment, and supplies purchased by the contractor are "tangible personal property." La.R.S. 47:301(10), (16). Therefore, the contractor, as the purchaser and consumer of the building materials used in construction of an immovable, owes a sales/use tax on the purchase. Bill Roberts, Inc. v. McNamara, 539 So.2d 1226 (La.1989). The fact that a portion of the construction job was performed by subcontractors under contract with a general contractor is irrelevant in the computation of the amount of sales tax due from the general contractor on building materials used in a construction project. St. John the Baptist Parish School Bd. v. Marbury Pattillo Constr. Co., 254 So.2d 607 (La. 1971).
Modern Homes & Equip. Co. v. Collector of Revenue, 422 So.2d 1237 (La.App. 1st Cir.1982) and Griffin & Zimmer Contracting Co. v. Mouton, 231 So.2d 644 (La. App. 1st Cir.1970) hold that a subcontractor is liable for sales taxes on the materials, labor, and profit portions of its contracts that provide only for the fabrication and delivery to the general contractor of items of tangible personal property, regardless of whether these items may later be incorporated into an immovable structure. American Sign and Indicator Corp. v. City of Lake Charles, 320 So.2d 234 (La.App.3d Cir.1975) holds that the contractor who constructs an immovable is not liable for sales or use taxes relating to the labor portion of its overall contract expense in building an immovable, but rather is only liable for sales and use taxes calculated on the materials that it purchases or uses in completing its contract.
The St. Charles Parish Ordinance (Ordinance) is patterned after the state sales and use tax found at La.R.S. 47:301 and 47:302.
The Louisiana Supreme Court has held that the ordinances of a sales tax district and school board, which are copied from the state sales and use tax statute, are deemed to have incorporated interpretations of the state statutes on which they were based. Sales Tax Dist. No. 1 Lafourche Parish v. Express Boat Co., 500 So.2d 364 (La.1987). However, interpretations and applications of the two tax laws are not at issue. The critical issue is one of contract interpretation. The State Department of Revenue and Taxation, pursuant to its audit of Louisiana Paving, determined the subcontract between Louisiana Paving and Gulf Coast to be a contract for the construction of an immovable and accordingly assessed a sales/use tax on the cost price of the building materials only. St. Charles Parish, on the other hand, determined the very same contract to be a contract for the sale of tangible personal property (girders), and it assessed a sales/use tax on the entire contract price of the girders, less installation costs.
Therefore, the basic question becomes: Legally, can the same contract be classified differently by two different taxing authorities?

ANALYSIS
La.C.C. arts. 2439, 2756, and 2757 define sales contracts and building contracts. They read as follows:
Art. 2439. Sale, definition
Art. 2439. The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent.
Art. 2756. Building by plot and work by job, definitions
Art. 2756. To build by a plot, or to work by the job, is to undertake a building or a work for a certain stipulated price.
Art. 2757. Agreement to furnish work or materials or both
Art. 2757. A person, who undertakes to make a work, may agree, either to furnish his work and industry alone, or to furnish also the materials necessary for such a work.
*597 La.C.C. arts. 2045, 2046, 2047, and 2050 govern the interpretation of contracts. They read as follows:
Art. 2045. Determination of the intent of the parties
Interpretation of a contract is the determination of the common intent of the parties.
Art. 2046. No further interpretation when intent is clear
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.
Art. 2047. Meaning of words
The words of a contract must be given their generally prevailing meaning.
Words of art and technical terms must be given their technical meaning when the contract involves a technical manner.
Art. 2050. Provisions interpreted in light of each
Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.
Jurisprudence has developed several tests for determining whether a given contract is a contract of sale or a construction contract. This Court, in Alonzo v. Chifici, 526 So.2d 237, 241 (La.App. 5th Cir.1988), writ denied, 527 So.2d 307 (La.1988) (quoting Acadiana Health Club, Inc. v. Hebert, 469 So.2d 1186, 1189 (La.App. 3d Cir.1985)), noted that
There are three major factors in determining whether a contract is a contract of sale or a contract to build or to work by the job. First, in a contract to build, the "purchaser" has some control over the specifications of the object. Second, the negotiations in a contract to build take place before the object is constructed. Lastly, and most importantly, a building contract contemplates not only that the builder will furnish the materials, but that he will also furnish his skill and labor in order to build the desired object.
(Citations omitted.)
We now turn to view the language of the subcontract between Louisiana Paving and Gulf Coast, and specifically, paragraphs 1, 2, and 3, which state:
1. PERFORMANCE:

Subcontractor agrees to perform the work specified and to furnish all necessary labor, materials, equipment, supplies and other items therefor and to promptly pay for all of such, for which Contractor may be held liable, and to complete the work in strict compliance with the terms of the Original Contract and to the satisfaction of and in compliance with the directions of the Owner or Owner's Engineers.
2. ORIGINAL CONTRACT:

The terms, conditions, specifications drawings, schedules and contract documents forming a part of the Original Contract between Contractor and the Owner are hereby made a part of this subcontract by reference as fully as if set out in detail. Subcontractor shall be bound to the same extent that Contractor is bound by each and every covenant, obligation and provision of said Original Contract insofar as the same is applicable to the work of Subcontractor.
3. WORK:

Subcontractor shall perform all of the work necessary and incidentally required to provide, erect, align and bolt the pre-stressed concrete girders, with applicable bearing pads, incorporated in the above[-]referenced project....
....
It is understood that all quantities set out above are approximate.
Subcontractor shall perform said items for the Unit Prices set opposite each item and said prices shall constitute the sole consideration for all work performed hereunder. Any increase or decrease in quantities shall be adjusted on the same basis.
The above prices are based on the Subcontractor utilizing one lift crane with a capacity of at least 110 tons, 8 hours/ day, 5 days per week. Erection production shall be at the rate of approximately 20 girders per day.

*598 The above prices include all applicable taxes and/or royalties.
As noted in paragraph 2 of the subcontract, it incorporates in full the "main" contract between Louisiana Paving (contractor) and the State of Louisiana, Department of Transportation and Development, through the Department of Highways.
Regarding the three-part test, we find it self-evident that the "purchaser," the Louisiana Department of Transportation and Development, had control over the specifications of the project and likewise find that the "main" contract itself is ample evidence that detailed negotiations took place before the object, the Luling Bridge North Approach, was constructed. Ergo, the question in dispute is whether Gulf Coast furnished only the finished products (the girders) or also furnished the skill and labor inherent in the transaction.
The record shows Mr. E.H. Flynn seems to emphasize three points in support of his position that the contract is one of sale. First, Gulf Coast did not install the girders itself, but instead subcontracted this portion of the work to Coastal Bridge. Second, Louisiana Paving paid Gulf Coast for the girders on a per unit basis, with a stockpile payment arrangement. Third, Mr. Flynn felt that the installation was merely incidental to the furnishing of the girders by Gulf Coast.
The language of subcontract paragraph 3, in pertinent part, reads, "WORK: Subcontractor shall perform all of the work necessary and incidentally required to provide, erect, align and bolt the pre-stressed concrete girders, with applicable bearing pads, incorporated in the above[-]referenced project, in accordance to the following price schedule...." (Emphasis added.)
Mr. Flynn seems to emphasis the word "incidentally" as the crucial point in proving that this contract was really for the sole purpose of selling finished girders to Louisiana Paving. Mr. Flynn also emphasizes the fact that Gulf Coast did not install the girders themselves.
We find that the language of the subcontract reveals that the word "incidentally" immediately precedes the word "required," which is an adjective that modifies the word "work," which is found immediately followed by the word "necessary." Both "necessary" and "required" are adjectives which modify the word "work." "Incidentally" is an adverb that modifies the adjective "required." Both adjectives, "necessary" and "required," are joined by the conjunction "and," which, as opposed to the conjunction "or," means both words connected by it. "Necessary" is defined by the Webster's Unabridged World Dictionary as "whatever is essential for some purpose" and "that which is determined and fixed and inevitable." "Incidentally" is defined by the same source as "by chance" and "as a matter of minor import." Because the words "necessary" and the phrase "incidentally required" are joined by the conjunction and, we must read them both together. Therefore, Gulf Coast was responsible for all work necessary and incidentally required, which clearly means all work essential and that which arises by chance. It is clear that Louisiana Paving delegated the entire responsibility of the girders' fabrication and installation to Gulf Coast, a fact to which representatives from both parties testified.
The record also shows that Mr. Flynn admits that the subcontract gave Gulf Coast the responsibility for installing the girders on the bridge. However, he emphasizes that Gulf Coast did not itself perform the installation, but subcontracted it to Coastal Bridge. To him, this physical fact changed the Louisiana Paving/Gulf Coast subcontract from a construction contract to a sales contract. We disagree.
Gulf Coast could not have legally entered into a subcontract with Coastal Bridge had Gulf Coast not had the legal and contractual responsibility for this portion of the job. We note that Gulf Coast's operations manager personally supervised all of Coastal Bridge's installation activities, because it was Gulf Coast's understanding that it was ultimately responsible for this portion of the contract. Importantly, we must note that paragraph 12 of the subcontract gave Gulf Coast the right to assign portions of *599 this subcontract with the permission of the contractor, Louisiana Paving. Such permission was in fact given for Gulf Coast's subcontract with Coastal Bridge.
Logically, we must look at Gulf Coast's contractual responsibility and not the physical fact of work they did or did not personally perform to properly characterize their subcontract with Louisiana Paving. First, clearly Gulf Coast and not Louisiana Paving had the contractual obligation to install the girders. Second, the installation was done under Gulf Coast's direction and control by a subcontractor, Coastal Bridge, who was responsible to Gulf Coast and who was paid by Gulf Coast. Clearly, Gulf Coast's responsibility for both the fabrication and the installation of the girders makes this a construction contract.
As a second point of contention, Mr. Flynn points to the payment arrangements between Louisiana Paving and Gulf Coast. Mr. Flynn declared the fact that Gulf Coast was to be paid on a "per unit" basis for the girders and their installation made this a sales contract.
However, Louisiana Paving's representative testified that most construction contracts were priced according to this method because it allowed for contingencies and changes in the final amount of work required without the need to renegotiate the entire contract. This testimony was unrefuted.
Lastly, it was Mr. Flynn's opinion that the installation was merely "incidental" to the fabrication of the girders, that it was somehow a minor event and of vastly lesser import in the contract. He testified that he understood the installation to be "lift[ing] these things into place and ... bolt[ing] four (4) little nuts." Again, we disagree.
These statements are unsupported by the record. While the actual physical process of installation is not detailed in the record (except for a small description), the Gulf Coast-Louisiana Paving subcontract does contain the following provision in paragraph 3: "The above prices are based on the Subcontractor utilizing one lift crane with a capacity of at least 110 tons, 8 hours/day, 5 days per week. Erection production shall be at the rate of approximately 20 girders per day. The above prices include all applicable taxes and/or royalties."
This provision implies heavy physical work. At the least, it further bolsters the "work and the labor" aspect of a construction contract, instead of a mere sale where items are delivered and the responsibility of the subcontractor ends.
We note further that both Louisiana Paving and Gulf Coast deny that a "delivery" of the girders ever took place. Delivery, or transfer of possession, is an element of a sale as defined by both Ordinance § 1.18 and La.R.S. 47:301(12). Possession, for the purposes of the statute (La.R.S. 47:301(12)) defining a sale, for sales tax purposes, as meaning transfer of title or possession, refers only to actual physical control over an item or article of tangible personal property. Potashnick Constr., Inc. v. La. Dep't of Revenue and Taxation, 470 So.2d 526 (La.App. 1st Cir.1985). While Gulf Coast acknowledges that they delivered girders to the site, both parties deny that Louisiana Paving ever accepted delivery in a legal sense. Both parties assert that Gulf Coast and its subcontractor, Coastal Bridge, maintained possession and control of the girders at all times from their arrival at the site through their installation. Louisiana Paving claims that there was no acceptance of delivery until it accepted that portion of the completed bridge.
Furthermore, reason and logic tells us that a single contract should not and cannot be interpreted differently by taxing authorities in a state. Commonsensibly, the characterization of a contract cannot change like a chameleon. We are reminded of the two blind men looking at an elephant. One thought it was a wall, and the other a tree. However, it is always and only an elephant. Ergo, this contract must be either a sales or a building contract. It cannot be both in the view of two different taxing authorities. Such disparate treatment seriously disrupts the construction industry where contractors should and *600 must rely upon the uniform application of the law by all taxing authorities.
For the reasons assigned, the judgment of the trial court dated January 31, 1992 is hereby set aside and annulled. All costs of this appeal are to be assessed against the appellee.
SET ASIDE AND ANNULLED.