442 So.2d 764 (1983)
MISSISSIPPI RIVER TRANSMISSION CORPORATION, Plaintiff-Appellant,
v.
George B. SIMONTON, Sheriff and Ex-Officio Tax Collector, Lincoln Parish, Louisiana, Defendant-Appellee.
No. 15788-CA.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1983.
*765 Shotwell, Brown & Sperry by Burt W. Sperry and James H. Napper, II, Monroe, for plaintiff-appellant.
Barham, Adkins & Tatum by T.J. Adkins and R.W. Farrar, Jr., Ruston, for defendant-appellee.
Before FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
NORRIS, Judge.
Mississippi River Transmission Corporation appeals from a judgment rejecting its demands for the return of ad valorem taxes paid under protest pursuant to the provisions of La.R.S. 47:2110 to the sheriff and tax collector for Lincoln Parish and denying attorney's fees to the defendant. For the reasons hereinafter discussed, we affirm the judgment in its entirety.
The facts giving rise to this litigation are undisputed and are set forth as follows: On January 25, 1978, Mississippi River Transmission Corporation (hereinafter referred to as "Mississippi") filed a petition pursuant to La.R.S. 47:2110[1] praying for *766 the refund of ad valorem taxes for the tax year 1977 attributable to its natural gas inventory stored in its underground storage facilities known as the East Unionville and West Unionville Storage Fields in Lincoln Parish, Louisiana. On December 21, 1978, Mississippi moved and it was ordered that the ad valorem taxes for the tax year 1978 on the stored gas be included in the suit and the amount paid be segregated and held by the tax collector pending the outcome of the suit. On December 27, 1979, the 1979 protested taxes were included within the coverage of this suit on motion of Mississippi and by order of the district court. Likewise, the 1980 taxes were included in this suit by motion and order filed December 31, 1980. By joint motion and order, Wayne Houck, the successor to George B. Simon ton as Sheriff of Lincoln Parish, was substituted as the proper party defendant in this action. Mississippi filed an answer and reconventional demand in which it sought attorney's fees.
Mississippi is a "natural gas company" as defined by the Natural Gas Act, 15 U.S.C. 717, et seq., subject to federal jurisdiction and regulation. Mississippi owns and operates an interstate natural gas pipeline system by which it transports and sells natural gas in interstate commerce. As a part of this system, Mississippi owns and operates underground natural gas storage reservoirs located in Lincoln Parish, Louisiana. These reservoirs are known as the East Unionville and the West Unionville Storage Fields (hereinafter collectively referred to as "storage fields").
Mississippi's storage fields and the system to transport gas to and from the storage fields were acquired and constructed and are operated and maintained by Mississippi pursuant to certificates of public convenience and necessity as required by the Federal Energy Regulatory Commission (hereinafter referred to as "FERC") and its predecessor. All necessary orders and permits were also obtained from the Louisiana Department of Conversation, now known as the Office of Conservation.
Mississippi's storage operations were initiated in order to serve its existing contractual customers in an orderly and uninterrupted fashion. All gas stored in the storage fields is committed to these contractual obligations. Storage operations commenced in the West Unionville Storage Field in 1969 and in the East Unionville Storage Field in 1973. These storage operations *767 have been continuous since they were begun. The storage operations were not commenced or continued by Mississippi because it had surplus, uncommitted natural gas or because of "take or pay" contract problems with producers from whom it purchases natural gas. These storage fields are natural reservoirs selected by Mississippi due to their physical characteristics, adaptability to storage facilities and the volume of natural gas they would contain.
Natural gas enters Mississippi's interstate system at various points in Louisiana and Texas. From the moment the gas enters Mississippi's pipelines, it is committed to its customers in Arkansas, Missouri and Illinois, which it serves pursuant to certificates of public convenience and necessity issued by FERC. The system, the natural gas placed therein and the sales therefrom are certificated and subject to regulation by federal agencies, including principally the FERC. Mississippi makes no sales in the State of Louisiana of the natural gas that is withdrawn from the storage fields.
"Native", "Cushion", and "Working" gas comprise the categories of natural gas that are in the storage fields. Native gas consists of natural gas which was not recovered when the field was producing. Cushion gas consists of natural gas injected by Mississippi into the storage fields to provide the base pressure required for the operation of the storage fields. Working gas consists of the natural gas stored for varying periods of time in the storage fields pending its further transportation and delivery to customers. At all times, the volumes of cushion and working gas injected into and withdrawn from the storage fields are measured and known by Mississippi. The term "gas in storage" refers to both cushion and working gas.
The normal operation of the storage facilities is in two seasons. The "injection" season occurs generally in the summer months when there are periods of lower demand. The "withdrawal" season generally corresponds with the winter months when demands for natural gas are the greatest. While in the storage fields, the gas in storage remains subject to federal certificate and regulatory requirements and to the requirements of Mississippi's existing contracts which provide for the delivery of gas outside of Louisiana. Mississippi could not divert the gas in storage to an intrastate market nor could Mississippi hold the gas for sale in expectation of increased profits.
Ad valorem taxes for the year 1977 were calculated upon the value of the average monthly volumes of cushion and working gas in the storage fields during 1976, as reported by Mississippi to the Louisiana Tax Commission. Ad valorem taxes for 1978, 1979, and 1980 were calculated on the basis of gas in storage as of December 31st of the preceding year. Mississippi has timely paid the ad valorem taxes under protest for each of these years and has timely filed a petition seeking refund of the taxes paid pursuant to La.R.S. 47:2110. No ad valorem taxes were either due or assessed as to native gas.
The total dollar amounts of ad valorem taxes assessed on and attributable to Mississippi's gas in storage were $326,562.96 for the tax year 1977; $210,246.53 for the tax year 1978; $180,444.21 for the tax year 1979; and $227,693.86 for the tax year 1980. The total dollar amounts of ad valorem taxes assessed on and attributable to Mississippi's cushion gas were $217,850.15 for the tax year 1977; $155,813.70 for the tax year 1978; $106,389.91 for the tax year 1979; and $141,384.87 for the tax year 1980. The amounts attributable to cushion gas account for approximately 66% of the ad valorem taxes collected over the past four years. All of the volume of cushion gas was placed in the storage fields prior to and during the tax year 1977. Of that volume, 79.44% was produced from wells located outside of the state of Louisiana or from Federal Enclaves, and the remaining 20.56% was produced from wells located in the state of Louisiana and outside any Federal Enclave with Louisiana severance taxes having been paid thereon.
*768 The total dollar amounts of ad valorem taxes assessed on and attributable to Mississippi's working gas were $108,712.81 for the tax year 1977; $54,432.83 for the tax year 1978; $74,054.30 for the tax year 1979; and $86,308.86 for the tax year 1980. Of the working gas injected into the storage fields, the following amounts were produced from wells located outside of the state of Louisiana or from Federal Enclaves: 92.85% during the tax year 1977; 89.98% during the tax year 1978; 89.84% during the tax year 1979; and 82.64% during the tax year 1980. The remaining amounts of working gas injected were produced in Louisiana, and Louisiana severance taxes were paid thereon.
This case was submitted for the trial court's decision on stipulations and the deposition of William C. Ade, the vice-president of supply and gas control with Mississippi. After considering the stipulations and the testimony of Mr. Ade, the trial court found that the storage fields in question were for the economic benefit and business purposes of Mississippi and rejected the demands of Mississippi. After finding that this was a suit involving the timely payment of taxes under protest, the demand of Mississippi for attorney's fees was rejected.
Mississippi appeals assigning the following errors:
A. The District Court erred in failing to find that the volumes of cushion and/or working natural gas of the Plaintiff temporarily in storage for the tax years in question were goods in transit in interstate commerce and therefore exempted from state and local ad valorem taxation by the Commerce Clause (Article I, Section 8, Clause 3) and the Supremacy Clause (Article VI, Clause 2) of the United States Constitution.
B. The District Court erred in failing to find that the volumes of cushion and/or working natural gas of the Plaintiff temporarily in storage for the tax years in question were goods in transit in interstate commerce and therefore exempted from state and local ad valorem taxation by Article VII, Section 21(D)(3) of the
Louisiana Constitution of 1974 and LSA-R.S. 47:1951.3.
C. The District Court erred in failing to find that the volumes of natural gas of the Plaintiff temporarily in storage for the tax years in question, which were purchased from and delivered to storage from sources outside of Louisiana and which were sold and delivered to customers outside of Louisiana, were exempted from state and local ad valorem taxation by Article VII, Section 21(D)(3) of the Louisiana Constitution of 1974 and LSA-R.S. 47:1951.3.
Defendant has answered the appeal seeking an amendment of the trial court judgment to award attorney's fees under La. R.S. 47:1998.
Mississippi argues that the decision of the trial court that the gas in storage for the tax years in question was subject to state and local ad valorem taxation was erroneous because all of the volumes of the gas in storage were goods in transit and were subjects of or inseparably used in interstate commerce and were exempted from ad valorem taxes by the Commerce Clause and the Supremacy Clause of the United States Constitution as well as under Article VII, § 21(D)(3) of the Louisiana Constitution of 1974 and La.R.S. 47:1951.3. It is further argued that the "continuity of transit" of the interstate journey of the working gas was not interrupted or broken by the temporary storage of the gas for the tax years under the applicable federal jurisprudence and that the gas remained in interstate commerce while temporarily in storage in Lincoln Parish thereby making the taxes levied thereon an impermissible burden on interstate commerce. It is argued that because all of the volumes of cushion and/or working gas were temporarily in storage for the tax years after their having been purchased from and delivered to storage from sources outside of Louisiana and subsequently sold and delivered to customers outside of Louisiana that they were constitutionally exempted from the taxes levied by the prohibition contained *769 in Article VII, § 21(D)(3) of the Louisiana Constitution of 1974.
An identical argument has been resolved by this court adversely to Mississippi's position in United Gas Pipe Line Company v. Whitman, 390 So.2d 913 (La.App. 2d Cir.1980). However, Mississippi argues that the instant case is factually distinguishable. In United, the gas company operated a storage facility for natural gas in Bienville Parish, Louisiana, in a large underground geological formation which was formerly a producing natural gas field. Large quantities of working gas were piped primarily from out of state to the storage facility pending its ultimate withdrawal and delivery to out of state consumers during the winter season. United was assessed by the local tax collector for ad valorem taxes for the working and cushion gas in storage and thereafter filed suit for the recovery of the taxes it paid pursuant to La.R.S. 47:2110. United contended that the ad valorem taxes assessed on the working gas in storage were prohibited by the Commerce Clause of the United States Constitution because the gas was in transit in interstate commerce. In United, we held that the immunity from local taxation was lost because the storage of the working gas pending its ultimate withdrawal and delivery to out of state consumers was based on an economic decision of United necessitated by the character of its business, that is, the storage of the gas pending winter demand was an economically expedient method of assuring United the greatest amount of sales. Mississippi argues that the distinguishing features of the United decision are that in United, the long term purchase contracts had been entered into with natural gas producers and contained "take or pay" provisions which required that United either take the gas produced or pay for the annual volume of gas available for delivery. During the mid 1960's, United's supply of natural gas exceeded the demand and United elected to build the storage facility to store its excess gas. Although the original purpose of the storage facility was to alleviate "take or pay" problems, this situation did not exist at the time of the suit.
In the instant case, the storage fields were obtained for the purpose of meeting the increasing needs of Mississippi's existing customers in the most effective manner. "Take or pay" problems were and are not an issue. The storage fields were natural gas fields from which production had been taken. Mississippi acquired these storage fields in 1969 and 1973 because their pipeline facilities and suppliers could not provide as much gas as was needed to supply its customers. Other alternative methods of solving this problem were considered by Mississippi's management and the decision was made to acquire the storage fields as the most economically feasible method to operate its pipeline effectively to meet its customers' needs. At the time that the storage fields were acquired, the country was in an "energy crunch"; therefore, Mississippi would have been unable to meet its customers' needs during the peak season without these fields or some other method of storage. These storage fields are an important part of the continuing daily operation of the company. If the company was unable to utilize these fields, it would have a definite impact on its ability to serve its customers' needs and the company's profits. While Mississippi argues that the federal scheme of regulation known as the "Sales Refund Obligation" which requires Mississippi to refund the benefits of any extra sales above annual volume to its resale customers reduces the economic benefits of selling more gas through storage, this regulation is comparatively new and was not a consideration in the determination to utilize the storage fields in Lincoln Parish.
The trial court found that the storage of gas in Lincoln Parish was for an economic purpose and business benefit to Mississippi. This finding is supported by the record; thus, we cannot find that it is clearly wrong. Accordingly, the United decision is not factually distinguishable and the legal principles applied therein are equally applicable here. In United, we stated:
*770 The commerce clause prohibits taxation by the states of property which is in transit in interstate commerce. However, by reason of a break or interruption in the interstate transit, the property may be deemed to have come to rest within a state and become subject to the power of the state to impose a non-discriminatory property tax. The crucial question to be settled in determining whether property moving in interstate commerce is subject to local taxation is that of its "continuity of transit." Carson Petroleum Co. v. Vial, 279 U.S. 95, 101, 49 S.Ct. 292, 293, 73 L.Ed. 626, 629 (1929).
The general rule is that the interstate transit is continuous and the property is not subject to local taxation where the storage or delay is due to transportation, safety, or natural cause reasons. This immunity from local taxation is lost where the interruption is due to an intentional detention for the beneficial and business purposes and convenience of the owner. Enterprise Products Co. v. Whitman, 364 So.2d 634 (La.App. 2d Cir. 1978) writ denied 366 So.2d 916 ([La.] 1979). "The question is always one of substance, and in each case it is necessary to consider the particular occasion or purpose of the interruption during which the tax is sought to be levied." Independent Warehouses v. Scheele, 331 U.S. 70, 73, 67 S.Ct. 1062, 1065, 91 L.Ed. 1346, 1353 (1947).
The resolution of the present case requires the application of these well settled legal principles to the facts before us to determine the reason or purpose behind United's decision to place the natural gas in storage in Bienville Parish.

* * * * * *
We are of the opinion that the storage of the working gas in Bienville Parish pending its ultimate withdrawal and delivery to out of state consumers is based on an economic decision of United necessitated by the character of its business. * * * The storage of this gas pending winter demand is an economically expedient method of assuring United the greatest amount of sales. The commerce clause of the United States Constitution does not prohibit the taxing of this gas in storage.
Applying these well settled legal principles to the facts presented, we adhere to our opinion in United Gas Pipe Line Company v. Whitman, supra, and hold that because the storage of this gas pending its ultimate withdrawal and delivery to out of state customers is based upon an economic decision of Mississippi necessitated by the character of its business and is an economically expedient method of assuring Mississippi the greatest amount of sales, that the commerce clause of the United States Constitution does not prohibit the taxing of this gas in storage.
Further adhering to this opinion and our earlier opinion in Enterprise Products Co. v. Whitman, 364 So.2d 634 (La. App. 2d Cir.1978), we additionally hold that Louisiana Constitution Article VII, § 21(D)(3)[2] is essentially a codification of Federal law as it existed at the time of the enactment of its predecessor provision and exempts goods and commodities stored in transit in interstate commerce which the state would have been prohibited from taxing under existing Federal law. Because the gas in the instant case was stored by Mississippi for its business purposes, it cannot be considered to be in transit in interstate commerce and there is no exemption *771 from taxation under the Louisiana constitutional provision because the applicable exemption relates only to goods or commodities in transit. La.R.S. 47:1951.3[3] is simply a statutory effectuation of this constitutional provision and compels the same result. See United Gas Pipe Line Company v. Whitman, supra; Enterprise Products Co. v. Whitman, supra.
This suit was brought by Mississippi under La.R.S. 47:2110 attacking the legality of the ad valorem taxes levied on the gas in storage in Lincoln Parish and seeking the recovery of the taxes paid under protest. There is no provision in this statute requiring payment of attorney's fees for the tax collector by the unsuccessful taxpayer. The contention that recovery is allowed under La.R.S. 47:1998[4] is without merit. United Gas Pipe Line Company v. Whitman, supra; Enterprise Products Co. v. Whitman, supra.
Accordingly and for the foregoing reasons, the judgment of the trial court is affirmed in its entirety at the cost of appellant.
JUDGMENT AFFIRMED.
NOTES
[1] La.R.S. 47:2110 provides:

A. No court of this state shall issue any process whatsoever to restrain the collection of an ad valorem tax imposed by the state, or by any political subdivision thereof, under authority granted to it by the legislature or by the constitution. Any person resisting the payment of any amount of tax found due, or the enforcement of any provision of the tax laws in relation thereto, shall pay the amount found due to the officer designated by law for the collection of such tax and shall give the officer notice at the time of payment of his intention to file suit for the recovery of such tax. Upon receipt of such notice, the amount so paid shall be segregated and held by the officer for a period of thirty days. If suit is filed within such time for the recovery of the tax, such amount so segregated shall be further held pending the outcome of the suit. If the taxpayer prevails, the officer shall refund the amount to the taxpayer with interest at the rate of two per centum per annum for the period from the date such funds were received by the officer to the date of such refund.
B. The right to sue for recovery of a tax paid under protest as provided herein shall afford a legal remedy and right of action in any state or federal court having jurisdiction of the parties and subject matter for a full and complete adjudication of any and all questions arising in the enforcement of such right respecting the legality of any tax accrued or accruing or the method of enforcement thereof. In any such suit, service of process upon the officer designated by law for the collection of the tax shall be sufficient service, and he shall be the sole necessary and proper party defendant in any such suit.
C. The right to sue for recovery of a tax paid under protest as provided herein shall afford a legal remedy and right of action at law in the state or federal courts where any tax or the collection thereof is claimed to be an unlawful burden upon interstate commerce, in violation of any act of the Congress of the United States, the Constitution of the United States, or the constitution of the state, or in the federal courts in any case where jurisdiction is vested in any of the courts of the United States. Upon request of a taxpayer and upon proper showing by such taxpayer that the principle of law involved in an additional assessment is already pending before the courts for judicial determination, the taxpayer, upon agreement to abide by the pending decision of the courts, may pay the additional assessment under protest but need not file an additional suit. In such cases the tax so paid under protest shall be segregated and held by the officer designated by law for the collection of such tax until the question of law involved has been determined by the courts and shall then be disposed of as herein provided.
D. The right of action provided in this section shall be in addition to any rights elsewhere provided in this Sub-title, including R.S. 47:1998, affording taxpayers an opportunity to test the legality or correctness of their assessments or ad valorem taxes paid under protest before the courts of state.
E. Any taxpayer in the state who has paid his taxes under protest as provided in Subsection A above, and who has filed suit under the provisions of R.S. 47:1856, R.S. 47:1857, or R.S. 47:1998, shall cause to issue in said suit notice to the officer or officers designated for the collection of said taxes in the parish or parishes where the property is located, and such notice shall be sufficient to cause said officer or officers to further hold said amount segregated pending the outcome of the suit.
[2] Louisiana Constitution Article VII, § 21(D)(3) provides:

Section 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
* * * * * *
(D)(3) Goods, commodities, and personal property in public or private storage while in transit through this state which are moving in interstate commerce though or over the territory of the state or which are in public or private storage within Louisiana, having been shipped from outside Louisiana for storage in transit to a final destination outside Louisiana, whether such destination was specified when transportation began or afterward.
[3] La.R.S. 47:1951.3 provides:

For the purpose of ad valorem taxation, raw materials, goods, commodities and personal property stored in transit in the state while moving in interstate commerce shall not be treated as incorporated into the mass of the property in this state during the time that such raw materials, goods, commodities or personal property, received from outside the state, are held by any owner in public or private storage to be shipped to a point outside the state of Louisiana, whether specified when transportation begins or afterward.
All such property whether entitled to exemption or not shall be reported to the proper taxing authority on the forms required by law.
[4] La.R.S. 47:1998 provides:

A. Any taxpayer in the state dissatisfied with the action of the tax commission under the provisions of R.S. 47:1989 shall have the right to institute suit within thirty days of the decision of the tax commission in either the district court for the parish where the tax commission is domiciled or the district court of the parish where the property is located contesting the correctness of assessment. Any taxpayer who owns property assessed in more than one parish may institute this suit in either the district court for the parish where the tax commission is domiciled or the district court of any one of the parishes in which the property is located and assessed. Any taxpayer who has filed suit under this provision and whose taxes have become due shall pay said taxes under protest and shall cause to issue notice to the officer designated by law for the collection of such tax under the provisions of R.S. 47:2110(E).
B. Any taxpayer in the state shall have the right to institute suit in either the district court, for the parish where the tax commission is domiciled or the district court of the parish where the property is located, for the purpose of contesting the correctness or legality of any change in assessment made against the property under written instructions of the tax commission, pursuant to R.S. 47:1990, which suits must be instituted within thirty days after the date of the written instructions of the tax commission ordering the change. Any taxpayer in the state who has filed suit under these provisions and whose taxes have become due shall pay said taxes under protest and shall cause to issue a notice to the officer designated by law for the collection of such tax under the provisions of R.S. 47:2110(E).
C. The assessor shall bring suit, when necessary to protect the interest of the state, and shall also have the right of appeal and such proceedings shall be without cost to him or the state.
D. In all suits relating to property taxes the judge shall hear and try such cases without delay, in chambers if necessary, without cost to the reviewers or the assessors.
E. The plea of estoppel shall never be allowed by the court of this state in matters of local or municipal assessments where there are radical defects in the proceedings leading up to such local assessments, but such plea shall have full effect as against mere subsequent irregularities or informalities therein where no protest has been made thereto, provided that nothing contained in this Subsection shall apply to the levying of taxes for the security of any issuance of bonds.