CANNELLA, Judge.
Plaintiffs, St. John the Baptist Parish School Board and the Parish Council of the Parish of St. John the Baptist, appeal from a judgment dismissing their suit for sales and use taxes against defendants, Degesch America, Inc. (Degesch) and McShares, Inc. (McShares). We affirm because defendants are excluded and exempt under the parish ordinance, as well as under the United States Constitution’s interstate commerce clauses.
Defendants operate competing companies with offices in the Parish of St. John the Baptist. They fumigate grain aboard ocean-going vessels docked in ports along the Mississippi River in and out of the Parish of St. John the Baptist and in Canada. The fumigants are foreign imports which are shipped to defendant’s receiving offices, which are located in other states. Weekly the local offices order as much fumigants as they think they need for current contracts. Defendants are usually given three to four days notice, sometimes shorter. The fumigants remain in the local storehouse only long enough to fulfill the contracts on grain ships in port. This may be a few days, but no more than two weeks. Detailed records are kept of the amount of fumigants used and each unit is accounted for on each job.
The fumigants arrive at the local offices in solid form as tablets, pellets or in “bag blankets”. Tablet and pellet pesticide is “stepped” or “probed” into the grain. Bag blankets, containing pockets of the chemical, are laid a few inches under the surface of the grain. These procedures are performed immediately before departure of the vessel. Once the fumigants are in place, the hold is closed and the ship leaves port. Exposure to the air then activates a chemical conversion of the pesticide from solid to gas. During the voyage, over a period of days to weeks, the gas permeates the grain and destroys any insects.
Defendants are hired by shipping companies because most grain is shipped to foreign countries who require the delivered product to be free from insect infestation. Without fumigation to assure that the shipment is free from insects, infested grain would be refused at port, or discharged. Thus, the fumigation, in most cases, is done as a requirement of the commercial contract, as well as to protect the grain’s marketability. Occasionally, the fumigator will send an employee on the voyage to monitor the effect of the fumigation.
The United States Department of Agriculture, through its Federal Grain Inspection Service, examines grain prior to departure for foreign ports. The inspectors *236 grade the shipments according to the level of infestation. In order to receive a federal grain inspection certificate, fumigation is required. This certificate is a commercial document showing compliance with fumigation requirements.
In addition, the United States Animal Health and Plant Protection Service inspects grain shipments, checking for insects which are prohibited from entering certain foreign countries. Each foreign government has a specific agreement with defendants. A Phytosanitary Certificate is issued upon compliance with a foreign country’s agreement and the shipment is permitted to unload in that country. Also, a grain shipment under a foreign aid program is normally ordered fumigated by our federal government.
During the period in question, Degesch did not perform fumigation services on ships docked in the parish. Only a fraction of the taxes sought from McShares are for fumigation services performed in the parish.
Plaintiffs filed a rule against defendants on March 20, 1990 to collect sales and use taxes which they claimed were due from Degesch for January 1, 1986 to March 31, 1989 and from McShares for January 1, 1986 to May 31, 1989. The rule was heard on August 5 and August 20, 1991. The trial judge dismissed the action, holding that the defendants were excluded and exempted both under several parish ordinances and under the United States Constitution’s exclusion from local taxation for interstate and foreign commerce. U.S. CONST, art. I, § 9, cl. 5 and § 10, cl. 2.
The issue on appeal is whether the interstate commerce clauses or the local ordinances exclude or exempt the defendants from payment of parish sales or use taxes.[1] Plaintiffs assert that defendants are not exempt or excluded because the products are used or consumed in the parish, where they have come to rest, before re-entering the flow of interstate commerce. They assert that the jurisprudence and ordinances hold that items are taxable which are used or consumed in a parish or state, regardless of whether the product is ultimately intended for a non-taxable use.
The parish assessed the taxes under Section 2.01 of the St. John the Baptist Parish Council Sales and Use Tax Ordinance, No. 85-76, which states:
“Section 2.01. There is hereby levied from and after February 1, 1986, for the purpose stated in the proposition attached hereto as Exhibit A, a tax upon the sale at retail, the use, the lease or rental, the consumption and the storage for use or consumption of tangible personal property and upon the sale of services within the Authority as defined herein ...”
“Storage” and “use tax” are defined as follows:
“Section 1.21. “Storage” shall mean and include any keeping or retention in the Authority of tangible personal property for use or consumption in the Authority or for any other purpose other than for sale at retail in the regular course of business.”
“Section 1.24. “Use Tax” shall include the use, the consumption, the distribution and the storage for use or consumption, as herein defined.”
The purpose and parameters of the ordinance are set forth as follows:
“Section 3.02. It is not the intention of this ordinance to levy a tax upon articles of tangible personal property imported into the Authority or produced or manufactured in the Authority for export; nor is it the intention of this ordinance to levy a tax on a bona fide transaction in interstate commerce. It is, however, the intention of this ordinance to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in the Authority of tangible personal property after it has come to rest in the Authority and has become a part of the mass of property in the Authority.
*237 Section 3.03. No tax shall be due under this ordinance on the sale of any goods or personal tangible property delivered or services performed outside the territorial limits of the Authority.
Section 3.04. No tax shall be levied or collected on the storage of property which has been documented for use outside the Authority, although the property may be stored within the Authority if the owners of such property which is to be stored for exclusive use outside the Authority have acquired a tax exemption certificate from the local tax collector. When a vendor is presented with a copy of a tax exemption certificate from a vendor, the vendor shall be relieved from liability for the collection of use tax on such property. If the property is removed from storage and is used within the Authority, the property shall be subject to taxation.”
However, products imported for use by the importer from other states, countries or political subdivisions of this state are taxable as if they were sold at retail for use or consumption in the parish. Ordinance No. 85-76, Section 5.02.
The ordinances provide exemptions to the tax in Sections 3.01(6), 3.01(13) and 3.00(14) as follows, in pertinent parts:
“Section 3.01(6). The sales of materials and supplies to the owners or operators of ships or vessels operating exclusively in foreign or interstate coastwise commerce, where such materials and supplies are loaded upon the ship or vessel for use or consumption in the maintenance and operation thereof; nor to repair services performed upon ships or vessels operating exclusively in foreign or in interstate coastwise commerce; nor to the materials and supplies used in such repairs where such materials and supplies enter into and become a component part of such ships or vessels; ...
“Section 3.01(13) The sale at retail of pesticides used for agricultural purposes, including particularly, but not by way of limitation, insecticides, herbicides, and fungicides.”
“Section 3.01(14). The sale at retail of tangible personal property purchased within the Authority for use exclusively beyond the territorial limits of the Authority. If tangible personal property purchased tax free under the provisions of this section is later brought into the area of the Authority for use herein, the property shall be subject to the use tax as of the time it is brought into the area of the Authority for use herein, subject to the credit provided in Section 5.03 of this ordinance ...”
The facts are not disputed and the trial judge clearly articulates them in her reasons. Based on those facts, the trial judge concludes that defendants fall within the exclusions and exemptions of the parish ordinance. The exclusions are applicable under Section 2.01 and Section 3.02, because the product is not “consumed” or “used” in the parish. This product is consumed when it converts to gas and begins to perform the work for which it is designed. That occurs on-board the vessel, when it is at sea and out of the territorial limits of the parish. Further, for the same reason the fumigants are not “stored” for taxation purposes under Section 1.21. Under Section 3.03 the services are performed outside the territorial limits while on-board ship, and thus, this also excludes defendants.
The exemptions are also applicable. Under Section 3.01(6), the product is used for and in the operation or maintenance of a vessel in interstate commerce. Under Section 3.01(13), the fumigants are exempt for its use for agricultural (grain shipping) purposes. And, based on Section 3.01(14), the fumigants are exempt because the property is imported into St. John the Baptist Parish for use exclusively beyond the territorial limits of the parish. Consequently, we find that the trial judge did not err in finding the taxes excluded and exempt under the ordinance.
The trial judge also found that this product is also excluded from sales and use taxes by the United States Constitution. Article 1, Section 8(1) gives Congress the power to lay and collect taxes, duties, im *238 ports, and excises. Art. 1, Sec. 8(3) gives Congress the power to regulate commerce with foreign nations, the states and Indian tribes. Article 1, Sec. 9(5) and Art. 1, Sec. 10(2) prohibits a state from levying taxes or duties on imports or exports without Congressional consent.
In this case, the fumigants are imported into the United States, then into the receiving state. From there, the product comes into Louisiana and the parish on an “as needed” basis. It remains in the parish only a short time, and is then transferred to ships engaged in foreign commerce. The entire process is wholly within interstate and foreign commerce. It is controlled by contracts with foreign governments, the United States government and United States laws and regulations. The type of fumigant to be used, the method of application and the safety requirements are specifically designed for the requirements of the foreign government. In addition, the grain must meet the federally supervised criteria for prohibited insects under government to government agreements, as well as be subjected to federal inspection for grading insect infestation. Thus, we hold that the trial judge did not err in finding that defendants’ product is excluded from taxation under the United States Constitution.
Accordingly, we hereby affirm the judgment of the trial judge.
Costs are to be paid by plaintiffs.
AFFIRMED.

. Sales tax exemptions were extended to "use” taxes by the 1990 Louisiana Legislature. This legislation was given retroactive application. See: La.R.S. 47:301(19).