657 So.2d 221 (1995)
TIGATOR, INC.
v.
POLICE JURY OF WEST BATON ROUGE PARISH, et al.
BAYOU KRITTER, INC.
v.
POLICE JURY OF WEST BATON ROUGE PARISH, et al.
Nos. 94 CA 1771, 94 CA 1772.
Court of Appeal of Louisiana, First Circuit.
May 5, 1995.
Rehearing Denied July 25, 1995.
*223 Marvin E. Owen, Baton Rouge, for plaintiffs-appellants Tigator, Inc. and Bayou Kritter, Inc.
Riley Boudreaux, Jr., Baton Rouge, for defendants-appellees Police Jury of WBR Parish, et al.
Geneva Landrum, Baton Rouge, for amicus curiae, Department of Revenue.
Before WATKINS, FOGG and TANNER[1], JJ.
FOGG, Judge.
This matter concerns a claim by the plaintiffs/appellants, Tigator, Inc. (Tigator) and Bayou Kritter, Inc. (Bayou Kritter), (1) for a refund of sales and use taxes levied by the Police Jury, the School Board, Sales Tax District No. 1, and the Fire Protection District, all of the Parish of West Baton Rouge (collectively "the Taxing Authorities") and previously paid to them without protest from 1989 to September, 1992, and (2) for a refund of sales and use taxes levied by the Taxing Authorities and paid under protest from October, 1992 to date.

FACTS
The parties stipulated to the following facts. Tigator and Bayou Kritter are Louisiana corporations domiciled in West Baton Rouge Parish. They are separate corporations with some common ownership. Tigator and Bayou Kritter haul general commodities in 18-wheel tractor-trailer rigs. They operated a combined total of approximately eighty-five tractor-trailer rigs during the periods of this refund claim. Most of their business consisted of long-haul, interstate commerce; however, Tigator had one intrastate route between New Orleans and Baton Rouge.
During the years 1990, 1991, and 1992, the actual tractor-trailer mileage of Tigator was as follows:

 1990 1991 1992
Interstate Hauling 7,277,945 7,889,359 8,550,631
Intrastate Hauling 14,386 11,590 9,628
 _________ _________ _________
Total Mileage 7,292,331 7,900,949 8,560,628
Percent Interstate 99.80 99.85 99.89
Percent Intrastate .20 .15 .11

During the years 1990, 1991, and 1992, the actual tractor-trailer mileage of Bayou Kritter was as follows:

*224
 1990 1991 1992
Interstate Hauling 1,681,244 1,969,650 2,602,882
Intrastate Hauling 0 0 0
 _________ _________ _________
Total Mileage 1,681,244 1,969,650 2,602,882
Percent Interstate 100 100 100
Percent Intrastate -0- -0- -0-

All of the tractors purchased and included herein were manufactured by Peterbilt Motor Co. and were purchased by petitioners from San Antonio Truck Sales & Service, Inc. as the dealership for Peterbilt. The seller delivered the tractors to the petitioners' site in West Baton Rouge Parish where petitioners accepted the tractors.
All of the trailers purchased and included herein were manufactured by Utility Trailer Manufacturing Co. and were purchased by petitioners from Utility Trailer Sales Southeast Texas, Inc. as the dealership for the manufacturer. The trailers were picked up in Houston, Texas by petitioners where petitioners accepted the trailers. The trailers were then taken by petitioners to West Baton Rouge Parish. There, preparatory work such as checking, stenciling truck numbers and company logos, and preparing refrigeration units was done. The first dispatch of a trailer was from West Baton Rouge Parish.
On November 30, 1992, Tigator and Bayou Kritter each filed suit, seeking a refund of sales taxes.[2] Tigator set forth two causes of action: an action for a refund of sales taxes paid in error from 1989 through September of 1992 in the sum of $153,528.72 and an action for a refund of the sales taxes paid under protest from October, 1992 to date. Bayou Kritter set forth two causes of action: an action for a refund of sales taxes paid in error from 1989 through September of 1992 in the sum of $34,851.57 and an action for a refund of sales taxes paid under protest in the amount of $226.79 and the disputed portion of monthly sales taxes paid under protest thereafter.
The Taxing Authorities answered the lawsuits and filed reconventional demands, seeking to recover attorney's fees. They then filed peremptory exceptions raising the objection of prescription in each suit, contending that plaintiff's claim for a refund of taxes paid prior to two years before the date a claim for refund was filed (which in both suits is August 25, 1992, the date each taxpayer filed a claim for refund of sales taxes with West Baton Rouge Parish) had prescribed. The Taxing Authorities also filed peremptory exceptions of no cause of action, contending Tigator and Bayou Kritter were not due a refund of the sales taxes paid for years 1989 through September, 1992, a total of $188,380.88, because Tigator and Bayou Kritter did not (1) pay the $188,380.88 of the sales taxes under protest with notice to the Tax Authorities that suit would be filed, and (2) they did not file suit within 30 days thereafter.
In a judgment rendered on May 18, 1994, the trial court dismissed the exceptions of prescription and sustained the exceptions of no cause of action, thereby dismissing the petitioners' claims for a refund of taxes not paid under protest. The court also dismissed petitioners' claims for a refund of taxes not paid under protest and paid under protest on the merits. Attorney's fee were awarded to the Taxing Authorities in the sum of 10% of all taxes recovered. From that judgment, Tigator and Bayou Kritter appeal.
The issues raised on appeal are (1) did the trial court err in dismissing the taxpayers' action for taxes not paid under protest pursuant to the defendants' exception of no cause of action[3]; (2) are these tractor-trailers and their repair parts subject to a sales/use tax under LSA-R.S. 47:305 E and the case of Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); and (3) were attorney's fees properly awarded.

*225 NO CAUSE OF ACTION
The relevant sections of the four parish taxing authorities' ordinances providing a refund mechanism are presented below:

WEST BATON ROUGE PARISH POLICE JURYSECTION 22-145:
Where no question of fact or law is involved, and it appears from the records of the parish that any monies have been erroneously or illegally collected from any dealer, or have been paid by any dealer under a mistake of fact or law, the treasurer, may, at any time within two (2) years of payment, upon making a record in writing of his reasons therefor, certify that any dealer is entitled to such refund and thereupon the treasurer shall authorize the payment thereof from any appropriation available for such purposes.

WEST BATON ROUGE PARISH SCHOOL BOARD SALES AND USE TAX ORDINANCESECTION 26:
That where no question of fact or law is involved, and it appears from the records of the School Board that any monies have been erroneously or illegally collected from any dealer, or have been paid by any dealer under a mistake of fact or law, the Treasurer may, at any time within two years of payment, upon making a record in writing of his reasons therefor, certify that any dealer is entitled to such refund and thereupon the Treasurer shall authorize the payment thereof from any appropriation available for such purposes.

WEST BATON ROUGE PARISH SALES TAX DISTRICT NO. 1SECTION 10.04:
Where no question of fact or law is involved, and it appears from the records of the District that any moneys have been erroneously or illegally collected from any dealer, or have been paid by any dealer under a mistake of fact or law, the Treasurer may, at any time within three (3) years from December 31 of the year in which the tax becomes due or after one (1) year from the date the tax is paid, whichever is later, upon making a record in writing of his reasons therefor, certify that any dealer is entitled to such refund and thereupon the Treasurer shall authorize the payment thereof from any appropriation available for such purposes.

WEST BATON ROUGE PARISH FIRE PROTECTION DISTRICT NO. 1SECTION 10.4:
Where no question of fact or law is involved, and it appears that the records of this Governing Body that any moneys have been erroneously or illegally collected from any dealer, or have been paid by any dealer under a mistake of fact or law, the Collector may, at any time within prescriptive period provided by R.S. 47:1623, upon making a record in writing of his reasons therefor, certify that any dealer is entitled to such refund and thereupon the Collector shall authorize the payment thereof from any appropriation available for such purposes.
The Taxing Authorities contend these ordinances, which require that there be no question of fact or law, are inapplicable because this case presents a question of law; that is, whether the taxes are legal.
As to the action for the refund of the use tax, we disagree. The parties stipulated to all the facts. For reasons fully discussed below, we find that the law governing the use taxes is clear and, therefore, there is no question of law. Briefly stated, LSA-R.S. 47:305 E provides that it is not "the intention of this Chapter to levy a tax on bona fide interstate commerce." The record contains a joint stipulation that taxpayers' business was engaged in long-haul, interstate commerce. Therefore, the Taxing Authorities' argument that Section 305 E does not preclude the taxation of this activity clearly has no basis in law.
The Taxing Authorities contend the power to grant a refund under these ordinances is discretionary. However, the courts have held that where there is no issue of law or fact the taxpayers have a right to a refund. Tenneco Oil Co. v. Stephens, 621 So.2d 848 (La.App. 4th Cir.1993), writ denied, 93-2216 (La. 3/30/95), 651 So.2d 857; Marathon Petroleum Co. v. Thiac, 547 So.2d 1091 (La. App. 5th Cir.), writ denied, 552 So.2d 386 (La.1989).
We find that Tigator and Bayou Kritter overpaid their parish taxes to the *226 extent they paid use tax on tractors, trailers and repair parts that were in interstate commerce and that a refund action is available to them for the recovery of those taxes. The record does not contain sufficient documentation for a determination of the amount of the refund to be made. However, the parties have stipulated that the Taxing Authorities "have the right at the end of this case to audit for (1) the factual and Mathematical (sic) (not legal) correctness of the amounts paid and (2) for a determination of which amounts were paid on the purchase of the tractors, trailer rigs, and operating supplies, parts and tires." Therefore, we will leave the computation of the correct amount of the refund due the taxpayers to the Taxing Authorities.[4]
We find, further, that the taxpayers do not have an action for refund of the sales taxes paid without protest. Where there is an issue of law concerning the taxability of a transaction, the power of the Taxing Authorities to grant a refund under these ordinances is discretionary. As more fully discussed below, with respect to the taxability of the sales of the tractors and the repair parts, there is an issue of law.
If there are two or more items of damages or theories of recovery which arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss one item of damages or theory of recovery. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La.1993). Because the refund action is properly raised in part, the trial court erred in sustaining the exceptions of no cause of action.

THE TAXABILITY OF THE PURCHASE/USE OF THE TRACTORS, TRAILERS AND THEIR REPAIR PARTS
The authority of political subdivisions to levy taxes on the citizens of the state of Louisiana is granted by Article 6 of the Louisiana Constitution. Article 6 Section 29 grants to local governmental subdivisions and school boards the authority to "levy and collect a tax upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption of tangible personal property and on sales of services as defined by law." Article 6 Section 30 grants a political subdivision "the power of taxation, subject to limitations elsewhere provided by this constitution, under the authority granted by the legislature for parish, municipal, and other local purposes, strictly public in nature."
This authority granted by the constitution to the political subdivisions to levy and collect taxes is specifically granted "under authority granted by the legislature." LSA-R.S. 33:2721 authorizes the sales and use taxes levied by West Baton Rouge Parish in the instant case. It provides, in pertinent part:
The respective governing bodies of the parishes of ... West Baton Rouge ... are hereby authorized to levy and collect within each such parish a tax ... upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption of tangible personal property and upon the sale of services, as presently defined in LRS [sic] 47:301 through 47:317, inclusive ... Except where inapplicable, the procedure established by R.S. 47:301 through 47:317, inclusive, shall be followed in the imposition, collection and enforcement of any tax so imposed thereunder ...
Additional taxes and tax rates are authorized by LSA-R.S. 33:2721.6, LSA-R.S. 33:2737 et seq., and LSA-R.S. 33:2738.62; those sections clearly state that the taxes authorized are limited to the requirements set forth in LSA-R.S. 47:301 through 47:317, which are the definitions, exemptions, exclusions, *227 and procedures set forth for state sales tax purposes. Clearly, the local governmental units are required, by statute, to incorporate the state requirements. In this case, the pertinent ordinances contain language acknowledging that they are subject to the provisions of LSA-R.S. 47:301 through 47:317.
Therefore, these tax ordinances are subject to LSA-R.S. 47:305[5], which, in pertinent part, precludes the taxation of interstate commerce as follows:
E. (1) It is not the intention of this Chapter to levy a tax upon articles of property imported into this state, or produced or manufactured in this state, for export; nor is it the intention of this Chapter to levy a tax on bona fide interstate commerce; ... It is, however, the intention of this Chapter to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state, of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state.
The Taxing Authorities contend that, nevertheless, these are valid tax assessments because the intent of the legislature at the time this legislation was promulgated was to levy taxes to the fullest extent of the federal law. We disagree. The language "it is not the intention of this Chapter to levy a tax on bona fide interstate commerce" provides a clear statutory prohibition of tax on interstate commerce. Furthermore, the exclusion of interstate commerce from taxation by the Louisiana legislature was consistent with the federal jurisprudence at the time of the enactment of the statute in 1948. In 1946, the Court held in Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265 (1946) that interstate commerce could not be taxed at all. Five years later, the case of Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951), reaffirmed Freeman, holding that a tax imposed for the privilege of engaging in interstate commerce is per se a violation of the commerce clause. Therefore, at the time the initial legislation was promulgated, taxation of interstate commerce was considered to be in violation of the commerce clause and prohibited. Louisiana's expressed intention not to tax interstate commerce was simply confirming an exclusion already required by the United States Constitution. Cf. American Mannex Corporation v. Cronvich, 251 La. 1014, 207 So.2d 778 (1968) (wherein the Supreme Court found that La. Const. art. 10, § 4(19)(c) (1921) which provided an exemption from ad valorem taxation relating to imports and exports and was adopted by constitutional amendment in 1960 was "an effort on the part of Louisiana lawmakers to codify generally the jurisprudence of the Supreme Court of the United States"); Mississippi River Transmission Corporation v. Simonton, 442 So.2d 764 (La.App. 2nd Cir. 1983), writ denied, 444 So.2d 1240 (La.1984), cert. denied, 469 U.S. 803, 105 S.Ct. 58, 83 L.Ed.2d 9 (1984); Enterprise Products Co. v. Whitman, 364 So.2d 634 (La.App. 2nd Cir. 1978), writ denied, 366 So.2d 916 (La.1979).
In 1977, the United States Supreme Court overruled Spector when it rendered Complete Auto Transit[6], holding that a tax on the privilege of engaging in interstate commerce was not per se invalid. The Court stated that a state tax statute which affects interstate commerce may survive a commerce clause challenge if the tax: (1) is applied to an activity having a substantial nexus with the taxing state; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the state's services. Although there is no longer a United States constitutional prohibition to the taxation of interstate *228 commerce, Louisiana remains precluded from doing so by LSA-R.S. 47:305 E.
The Taxing Authorities further assert these transactions are taxable under LSA-R.S. 47:305 E(1) which states, in pertinent part, "It is, however, the intention of this Chapter to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state, of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state." See LSA-R.S. 47:302(A)(1) and (2).
The Taxing Authorities contend the sale of the tractors to the taxpayers and the sale of the parts, operating supplies, and tires (hereinafter "repair parts") constitute sales at retail which are taxable. The term "sale at retail" is defined in the pertinent parish ordinances to include any transfer of title or possession, or both, of tangible personal property in the parish to an ultimate consumer for any purpose other than for resale in the form of tangible personal property. See LSA-R.S. 47:301(12) and (10). The transfer of the title and possession of the tractors occurred in West Baton Rouge Parish; therefore, those transactions constitute sales at retail within West Baton Rouge Parish. Any repair parts sold to the taxpayers by sellers in West Baton Rouge Parish or sold to the taxpayers by sellers located outside West Baton Rouge Parish and delivered to the taxpayers at their West Baton Rouge Parish site also constitute retail sales within West Baton Rouge Parish.
The statute provides for the taxation of property sold at retail in the state "after it has come to rest in this state and has become a part of the mass of this state." The taxpayers contend the tractors did not come to rest in this state or become a part of the mass of the state, but rather were always in interstate commerce. We disagree. When the tractors initially arrived in West Baton Rouge Parish, the petitioners inspected the vehicles, applied decals, attached licenses and, generally, made the units road-worthy, before placing them on the road. The interstate movement of delivery was complete and the interstate movement of hauling general commodities had not yet begun. Thus, there was a taxable moment at the point of delivery. The retail sale of the tractors was a discrete transaction which occurred in intrastate commerce. Therefore, the sale at retail of the tractors and repair parts in West Baton Rouge Parish is taxable under LSA-R.S. 47:305 E. See St. John the Baptist Parish School Board v. Marbury-Pattillo Construction Company, 259 La. 1133, 254 So.2d 607 (1971); Trestman v. Collector of Revenue, 233 La. 437, 96 So.2d 713 (1957); Pacific Tel. & Tel. Co. v. Gallagher, 306 U.S. 182, 59 S.Ct. 396, 83 L.Ed. 595 (1939); Southern Pacific Co. v. Gallagher, 306 U.S. 167, 59 S.Ct. 389, 83 L.Ed. 586 (1939).
The Taxing Authorities contend the trailers and the repair parts, that are not subject to a sales tax, are subject to use tax under parish ordinances which provide that there is a tax levied on tangible personal property when it is not sold but is used, consumed, distributed, or stored for the use or consumption in this state. See LSA-R.S. 47:302 A(2) (the parallel state statute). The term "use" is defined in LSA-R.S. 47:301(18) and in the pertinent parish ordinances as the exercise of any right or power over tangible personal property incident to the ownership thereof, except that it shall not include the sale at retail of that property in the regular course of business. In Mobil Oil Corp./The Superior Oil Co. v. McNamara, 517 So.2d 278 (La.App. 1st Cir.1987), this court interpreted the term "use" as defined in LSA-R.S. 47:301(18) to refer to the ultimate use and determined that "only those transactions which result in the ultimate use in this state... are taxable." Mobil Oil, at 279; See Traigle v. P.P.G. Industries, Inc., 332 So.2d 777 (La.1976) and McNamara v. U.O.P., Inc., 389 So.2d 741 (La.App. 2d Cir.1980), writ denied, 396 So.2d 898 (La.1981) (wherein the courts interpreted then LSA-R.S. 305(5)[7] as *229 taxing only the transaction which results in the ultimate use or consumption, or in the storage for ultimate use or consumption, in this state of tangible personal property); LSA-R.S. 47:305 E. The ultimate use of the tractor-trailers and their repair parts was to operate in interstate commerce. Under LSA-R.S. 47:305 E the use of operating the tractors and trailers and their parts in interstate commerce is not taxable.
After the tractor-trailers began their initial haul, they occasionally stopped in West Baton Rouge Parish for maintenance or repair. Repair of the tractor-trailers also occurred in other states as needed. The temporary time that the tractor-trailers were in Louisiana being repaired does not rise to the level of "coming to rest" in the state or "becoming part of the mass" of the state. See St. John the Baptist Parish School Board v. Degesch, 617 So.2d 234 (La.App. 5th Cir.1993), writ denied, 620 So.2d 847 (La. 1993) (wherein it was held that fumigants used for fumigation of grain aboard ocean-going vessels, and which remained in a storehouse in the taxing parish for a period of a few days to two weeks before being installed in ships, was not "used" in parish for the purposes of sales and use tax); Rowan Companies v. State Tax Com'n, 563 So.2d 951 (La.App. 1st Cir.), writ denied, 567 So.2d 1130 (La.1990) (wherein we held that a drilling rig which remained in this state for nearly six months before going offshore did not come to rest or become a part of the mass of property in Louisiana).
In asserting that the use of the tractor-trailers and the repair parts are taxable, the Taxing Authorities rely on Wardair Canada, Inc. v. Florida Dept. Of Revenue, 477 U.S. 1, 106 S.Ct. 2369, 91 L.Ed.2d 1 (1986) for the proposition that the commerce clause does not preclude the taxation of these transactions. In Wardair, the Supreme Court upheld a Florida tax on aviation fuel purchased within the state, finding that all four of the Complete Auto Transit criteria were satisfied. In applying the criteria Complete Auto Transit in that case the Supreme Court addressed the taxation of transactions in interstate commerce. As stated earlier, it is the existence of LSA-R.S. 47:305 E, not the commerce clause of the United States Constitution, that precludes the taxation of interstate commerce in the state of Louisiana. Therefore, the Taxing Authorities' reliance on this case in misplaced.
The Taxing Authorities' reliance on D.H. Holmes v. McNamara, 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988) is also misplaced. In that case, a Louisiana corporation challenged the state's imposition of a use tax on catalogs printed at its direction outside Louisiana and shipped to prospective customers within the state. The Court affirmed the decision of the Louisiana Court of Appeal, Fourth Circuit which held that once the catalogs landed in Louisiana mailboxes they left the stream of interstate commerce and became part of the property mass of the State. The Fourth Circuit held that the distribution of the catalogs constituted a taxable "use" under the statute. In the instant case, we are concerned with tractor-trailers which did not leave interstate commerce after the initiation of their first haul. Therefore, the facts before us are substantially different from those addressed in the Holmes case.
Recently, in the case of Columbia Gulf Transmission Company v. Broussard, 94-1650, (La. 4/10/95), 653 So.2d 522, the Louisiana Supreme Court found that natural gas diverted from interstate gas and used solely to propel other interstate gas was not in interstate commerce and, therefore, was taxable. The distinguishing factor between the Columbia Gulf case and the instant case is that in Columbia Gulf the natural gas taxed was consumed in the state of Louisiana.
The Taxing Authorities further claim the act of storing the tractor-trailers and the repair parts in West Baton Rouge Parish is taxable. The parish ordinances and LSA-R.S. 47:301(15) provide that the parish can tax only storage for use in the parish. See Terrebonne Parish Sales and Use Tax Department v. Callais Cablevision, Inc., 433 *230 So.2d 820 (La.App. 1st Cir.1983). Accepting arguendo that the tractor-trailers are stored in the parish, they are not stored to be used or consumed in the parish, as required by the statute.
Therefore, only the retail sale of the tractors and repair parts which occurred in West Baton Rouge Parish are taxable in West Baton Rouge Parish. The use and storage of the tractors, trailers and their parts in West Baton Rouge Parish are not taxable.

ATTORNEY'S FEES
The trial court awarded the Taxing Authorities attorney's fees of 10% of all of the amounts awarded to the Taxing Authorities under its judgment. The taxpayers contend the local ordinances[8] provide for attorney's fees only where a taxpayer does not pay taxes on or before a certain date. Herein, the parties stipulated that all taxes were paid in a timely manner. Therefore, the trial court incorrectly awarded attorney's fees to the Taxing Authorities.
LSA-R.S. 33:2841 authorizes the Taxing Authorities to enforce the collection of their taxes "in the manner provided for collection of taxes due the state." LSA-R.S. 47:1512 provides:
The collector is authorized to employ private counsel to assist in the collection of any taxes, penalties or interest due under this Sub-title, or to represent him in any proceeding under this Sub-title. If any taxes, penalties or interest due under this title are referred to an attorney at law for collection, an additional charge for attorney fees, in the amount of ten per centum (10%) of the taxes, penalties and interest due, shall be paid by the tax debtor.
Therefore, it is the state statute rather than the parish ordinances that govern the Taxing Authorities' ability to recover attorney's fees.
The taxpayers contend that under the state statute attorney's fees are not recoverable if the taxes are timely paid. The Taxing Authorities contend that the case of South Central Bell Telephone Company v. Traigle, 367 So.2d 1143 (La.1978) held that an attorney who successfully "collects" taxes paid under protest may recover attorney's fees under LSA-R.S. 47:1512, even if the payments are timely. In support of this argument, the Taxing Authorities also cite United Companies Life v. Baton Rouge, 577 So.2d 195 (La.App. 1st Cir.1991)
We note, initially, that in South Central Bell Justices Sanders and Marcus dissented on the issue of attorney's fees. Also, in the denial of a rehearing application, Justice Dennis, with Justices Tate and Calogero concurring, stated that the 10% attorney's fee provision was only to apply to those taxes that were paid late or had become delinquent and did not apply to those taxes that were paid timely. Justice Dennis stated that he "must express disagreement with the conclusion that every losing litigant in a tax case must pay 10% of the taxes as fees for the attorney employed by the Collector to represent him in the litigation." South Central Bell, at 1153. He further stated that "[i]t is difficult to believe that the legislature, by enacting La.R.S. 47:1512, intended to obliterate the distinction between taxes which are `due' and those which are `delinquent.'" South Central Bell, at 1154.
The taxes assessed and levied on Tigator and Bayou Kritter in this suit were timely paid under protest as were the portion of taxes in the South Central Bell case upon which attorney's fees were not awarded. As *231 Justice Dennis points out in the opinion on the denial of the rehearing in South Central Bell, there is a distinction between taxes which are delinquent when paid under protest and those which are timely paid under protest. As the Second Circuit stated in United Gas Pipe Line v. Whitman, 390 So.2d 913 (La.App. 2nd Cir.1980):
It is reasonable for a taxpayer who delinquently pays taxes under protest to be assessed attorney fees as a penalty in the event his challenge is found invalid. On the other hand, a taxpayer who timely pays his taxes and then seeks recovery should not be assessed for the tax collector's attorney fees simply because he is the losing party. Such a rule would place an unreasonable penalty on a taxpayer's right to challenge the validity of a tax and is less than the complete and adequate remedy mandated by La. Const. Art. VII, § 3.[9]
Therefore, in the instant case, the trial court erred in awarding attorney's fees to the Taxing Authorities. We note that the case of United Companies Life Ins. Co. v. Baton Rouge, 577 So.2d 195 (La.App. 1st Cir.1991) is distinguishable from the instant case as in that case the taxes were paid pursuant to an assessment and, therefore, were not timely paid.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed in all respects, except the dismissal of the exception of prescription. Tigator and Bayou Kritter are entitled to a refund of the taxes paid prior to October, 1992, for the various prescriptive periods as discussed above, except for those paid on the sale of the tractors and on the sale of the repair parts. Tigator and Bayou Kritter are entitled to a refund of all the taxes paid under protest in October of 1992 and thereafter, except for those paid on the sale of the tractors and on the sale of the repair parts. The exact amount of these refunds are to be determined in accordance with this opinion by the Taxing Authorities as agreed to by stipulation of the parties.
Costs of this appeal, in the sum of $882.00, are assessed against the defendants.
REVERSED AND RENDERED.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] On motion of the petitioners, the two cases were consolidated early in 1993.
[3] There is some dispute between the plaintiffs and the defendants as to whether this issue has been properly raised on appeal. Considering the complexity of the procedure used in this case in the trial court and the arguments made on appeal, in the interest of justice, we will address this issue. See LSA-C.C.P. art 2164.
[4] We note that the ordinances provide various prescriptive periods as set forth above. LSA-R.S. 33:2718.1 also sets forth the prescriptive period for refunds. The local ordinances are required to conform with the related state law. BP Oil Co. v. Plaquemines Parish Government, 93-1109 (La. 9/6/94), 651 So.2d 1322, reh'g granted in part (La. 1/27/95). Therefore, where the local ordinances are more restrictive of a taxpayer's rights than the state law, the state law primes the local ordinances.
[5] The pertinent parish ordinances provide for the same restrictions as does this statute.
[6] Recently, in the case of Comdisco, Inc. v. Department of Revenue and Taxation, 647 So.2d 341 (La.App. 1st Cir.1994), writ denied, 95-0257 (La. 3/30/95), 651 So.2d 837, this court relied on Northwest Airlines v. Minnesota, 322 U.S. 292, 297, 64 S.Ct. 950, 953, 88 L.Ed. 1283 (1944) to resolve an issue involving interstate commerce and taxation. The Louisiana Supreme Court, by applying Complete Auto Transit in the case of Columbia Gulf Transmission Company v. Broussard, 94-1650, (La. 4/10/95), 653 So.2d 522, has impliedly overruled Comdisco to the extent of its reliance on Northwest Airlines.
[7] LSA-R.S. 47:305(5), the predecessor of LSA-R.S. 305 E, provided: "It is not the intention of this Chapter to levy a tax upon articles of tangible personal property imported into this state, or produced or manufactured in this state, for export: nor is it the intention of this Chapter to levy a tax on bona fide interstate commerce. It is, however, the intention of this Chapter to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state, of tangible personal property after it has come to rest in this state and has become part of the mass of property in this state."
[8] Each of the four defendants has its own ordinance for this purpose; however, all four ordinances are the same as that of the West Baton Rouge Police Jury which states:

If the amount of tax due by the dealer is not paid on or before the twentieth day of the month next following the month of which the tax is due, there shall be collected, with said tax, interest upon said unpaid amount, at the rate of fifteen (15) per cent per annum, or fractional part thereof, to be computed from the first day of the month following the month for which the tax is due; and in addition to the interest that may be so due thereon shall also be collected, a penalty equivalent to five (5) per cent for each thirty (30) days, or fraction thereof, of delinquency, not to exceed twenty-five (25) per cent in aggregate, of the tax due, when such tax is not paid within twenty (20) days of the date of the tax first becomes due and payable, and in the event of suit, attorney's fees at the rate of ten (10) per cent of the aggregate of tax, interest and penalty.
[9] LSA-Const. Art. 7, § 3 provides:

The legislature shall prohibit the issuance of process to restrain the collection of any tax. It shall provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer.